IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY L. DANCE JR.                                      CIVIL ACTION

v.                                                     No.

                                                       Jury Trial Demand

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA STATE POLICE, MARCUS BROWN, TYREE BLOCKER
GEORGE BIVENS, LISA CHRISTIE, EDWARD HOKE, WENDELL MORRIS, WILLIAM ARNDT, GREGORY
BACHER, DAVID CAIN, MICHAEL WITMER, THOMAS TRAN, WILLIAM BROWN AND THREE JOHN &
JANE DOES.

COMPLAINT

## I.    INTRODUCTION

1.      Plaintiff brings this civil action seeking all relief provided under the law including,

such relief as but not limited to compensatory, consequential, nominal, and punitive damages,

reasonable attorney fees, litigation costs, and equitable relief including injunctive and

declaratory relief such as but not limited to reinstatement and the declaration of an

unconstitutional, void an invalid policy and conduct.

2.      The relief sought is provided under the 1964 Civil Rights Act, (42 U.S.C. §1983 et

seq.), Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000(e) et seq.) and the comparable state

law, The Pennsylvania Human Relations Act (43 P.S. § 951 et seq.) and the United States

Constitution and laws of the United States, for denial of equal employment terms and conditions

because of race and/or race discrimination, and retaliation for aiding or opposing employment

discrimination; and, a deprivation under color of state law of Plaintiff's First and Fourteenth

Amendment constitutional rights to free speech and equal protection of law arising from

1

Plaintiff's aid with sworn testimony, and in a trial, for the opposition to race and/or sex discrimination in employment by Sergeant David R. Holt, (hereinafter as Sergeant Holt), an African-American male.

3.      The law was clearly established at the time of the Defendants acts. The Defendants knew or should have been known their acts would likely cause the deprivation, deny Plaintiff of rights, and subject them to liability under the law.

4.      As is more fully set forth below, Defendants at all times related to the claims acted intentionally, recklessly, maliciously, and with gross negligence. They acted in reckless disregard of and/or in deliberate indifference to the Plaintiff's rights.

5.      The Defendants at all times related to the claims knew or were on notice that their conduct would result or likely result in a deprivation of the rights, and that their conduct would subject them to liability under The Civil Rights Act of 1964 (42 U.S.C. § 1983 et seq.).

6.      As is more fully set forth below, the Defendants acted a supervisors, co-employees, and persons, as such terms are intended by law. They, while acting under color of state law, and a policy, practice or custom, which is more fully identify below, intentionally, recklessly, maliciously, and/or in reckless disregard or deliberate indifference of Plaintiff's rights, deprived the Plaintiff of federally secured rights to free speech, due process, and equal protection.

## II.      JURISDICTION / VENUE

7.      Jurisdiction for the District Court to hear this action is afforded to the District Court pursuant to 42 U.S.C. § 1983 et seq., The Civil Rights Act of 1964, its amendments and under 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (3) and (4) (Civil Rights).

8.      Venue properly lies in the United States District Court for the Eastern District of Pennsylvania because the cause of action herein pleaded occurred in Berks County which is located in the venue established for the District Court for the Eastern District of Pennsylvania. Plaintiffs invoke supplemental jurisdiction under 28 U.S.C. § 1367 so the District Court can resolve the state pendent claims.

III.    **PARTIES**

9.      **GARY DANCE**, (hereinafter as Plaintiff) is a natural person adult over eighteen, and his gender is male and race African American; he is now and for all time related to the causes of action an employee of the Commonwealth of Pennsylvania, Pennsylvania State Police (hereinafter as CWOPA/PSP).

10.     Plaintiff resides in the CWOPA and venue of the United States District Court, Eastern District.

11.     **CWOPA/PSP** is the Defendant and CWOPA/PSP is an employer employing over 15 employees; it is an employer as the term is intended under Title VII and the Pennsylvania Human Relations Act.

12.     The CWOPA is a public employer as is the PSP, which is an agency of the CWOP.

13.     The CWOPA/PSP Defendants but not the Commonwealth and its agency the PSP falls under 42 U.S.C. §1983. As "Persons".

14.      The CWOPA/PSP is an employer as intended under Title VII (42 U.S.C. § 2000(e); it employs more than 20 employees, including Plaintiff and the individual Defendants. However, for the purpose of any Title VII's "cap" of compensatory damages, the CWOPA/PSP employs over 500 people.

15.    **MARCUS BROWN** (hereinafter as Colonel Brown) is a resident of and domiciled in the CWOPA; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); he is a supervisor and/or decision-maker as intended for a "cat's paw" theory of liability claim; he is a White male and for all times related to Plaintiff's claims against him is the Commissioner of the PSP.  Colonel Brown was the principle decision and policy-maker for the PSP, he made decisions that affect and adversely affected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed. Colonel Brown actually participated in the adverse actions taken against Plaintiff, as such he aided or abated the Employer's practice or policy to discriminate in employment, as an aider or abettor is intended under the PA Human Relations Act theory of "aider and abettor" liability.

16.    **Tyree Blocker** (hereinafter as Colonel Blocker) a resident of and domiciled in the CWOPA; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); he is a supervisor and/or decision-maker as intended for a "cat's paw" theory of liability claim; he is a Black male and for all times related to Plaintiff's claims against him is the Commissioner or of the PSP.  Colonel Blocker is the principle decision and policy-maker for the PSP, he makes decisions that affect and adversely affected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed. Colonel Blocker actually participated in the adverse actions taken against Plaintiff, as such he aids or abets the Employer's practice or policy to discriminate in employment, as an aider or abettor is intended under the PA Human Relations Act theory of "aider and abettor" liability.

17.    **GEORGE BIVENS** (hereinafter as Lieutenant Colonel Bivens) is a resident of and is domiciled in the CWOPA; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. §

1983); he is a White male and supervisor and/or decision-makers as the terms are intended for the claims under a "cat's paw" theory of liability; and he was for all time related to the cause of action an adverse supervisor and principle decision-maker, who makes decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, and was an "aider and abettor" liability.

18.    **Lisa Christie** is a resident of and is domiciled in the CWOPA; she is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); she is a White female and supervisor and/or decision-makers as the terms are intended for the claims under a "cat's paw" theory of liability; and she is for all time related to the cause of action an adverse supervisor and principle decision-maker, who makes decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; she actually participated in the adverse actions taken against Plaintiff, and is an "aider and abettor" liability.

19.    **EDWARD HOKE** (hereinafter as Major Hoke) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a White male and supervisor, for all times related to the causes of action; he was a Major, and/or a decision-maker as the term intended for the claims and/or a "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability.

20.     **WENDELL MORRIS** (hereinafter as Director  Morris) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a Black male supervisor, for all times related to the causes of action; he was a Captain/Major, and/or a decision-maker as the term intended for the claims and/or a "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed;  he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability.

21.     **GREGORY BACHER** (hereinafter as Captain Bacher) is a resident of and domiciled in Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a White male and supervisor, for all times, related to the causes of action; he was a Captain, and/or he is a decision-maker as intended by the "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed;  he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability.

22.     **DAVID CAIN** (hereinafter as Lieutenant/Captain Cain) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a White male and supervisor, for all times related to the causes of action; he was a Captain, and/or he is a decision-makers as intended by the "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor

who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability

23.     **William Arndt** (hereinafter as Arndt) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a White male and supervisor, for all times related to the causes of action; he was a supervior or decision-maker as intended by the "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability

24.     **Michael Witmer** (hereinafter as Witmer) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a White male and supervisor, for all times related to the causes of action; he was a supervisor or decision-maker as intended by the "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability

25.     **Thomas Tran** (hereinafter as Tran) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); a

White male and supervisor, for all times related to the causes of action; he was a supervisor or decision-maker as intended by the "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability

26.    **William Brown** (hereinafter as Brown) is a resident of and domicile in the state of Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983); an African-American male and supervisor, and for all times related to the causes of action he was a supervisor or decision-maker as intended by the "cat's paw" theory of liability; he is for all time related to the cause of action a principle decision-maker and/or adverse supervisor who made decisions that affect and adversely effected Plaintiff work, assignments, career advancements, discipline, times and types of duty performed; he actually participated in the adverse actions taken against Plaintiff, as too is intended under the theory of "aider and abettor" liability

## IV.    FACTS

27.    On about May 17, 1993, the CWOPA/PSP hired Plaintiff as a "Member" of the PSP.

28.    In or about November 1993, Plaintiff graduates from the PSP Academy and was assigned to Troop T, Pocono as a Trooper.

29.    In or about March 1996, Plaintiff transfers from the Pocono station to the King of Prussia station.

30.    In or about November 1998, Plaintiff was promoted to Corporal.

31.    In or about March 2002, Plaintiff was promoted to Sergeant.

32.    In or about February 2005, Plaintiff was promoted to Lieutenant.

33.    In or about July 2012, Plaintiff was reassigned to Troop T, as the Eastern Section Field Commander and supervisor over two (2) stations: King of Prussia and Pocono.

34.    Plaintiff's immediate supervisor was Captain Bacher, a White male, Troop T, Commanding Officer.

35.    Captain Bacher's immediate supervisor was Major Hoke, a White male.

36.    In or about July 2012, Lieutenant Cain, a White male was reassigned to Troop T, as the Central Section Field Commander. Lieutenant Cain has a 20-plus year friendship with Captain Bacher.

37.    On or before July 2012, Lieutenant Richard Bosch (hereinafter as Lieutenant Bosch), a White male was assigned to Troop T, as the Western Section Field Commander.

38.    In or about July 2012, Lieutenant Edward Murphy (hereinafter as Lieutenant Murphy), a White male was reassigned to Troop T, as the Staff Services Section Commander.

39.    In total, there were (4) four Lieutenants assigned to Troop T. Plaintiff was senior to his similarly situated White peers by (3) three to (6) six years, as a Lieutenant referenced above in paragraphs 33 to 35.

40.    For the times material to Plaintiff's causes of action, Plaintiff was the "*only*" minority, Black Lieutenant assigned to Troop T and the *"only minority, Black Field Commander in the entire PSP."* Plaintiff supervises approximately 50 State Troopers and civilian personnel.

41.    For the times material to Plaintiff's causes of action, all Defendants know or should know Plaintiff's race, opposition to employment discriminations, and aid to Sergeant

9

David Holt (hereinafter as Sergeant Holt) who opposed employment discrimination within the PSP.

42.    Plaintiff was the immediate supervisor of Sergeant Holt.

43.    Sergeant Holt was the "*only*" minority, Black Sergeant assigned to Troop T, and the "*only minority, Black Field Station Commander in the entire PSP*," and supervised approximately 18 State Troopers and civilian personnel.

44.    On April 17, 2013, Captain Bacher during an employer facilitated and run award ceremony states in front of approximately 15 of Plaintiff's coworkers, when issuing at Plaintiff a 20-year Service Award Pin, "*you can retire now*".

45.    Captain Bacher's comment humiliated and embarrassed Plaintiff.

46.    Captain Bacher intended to humiliate or embarrassed Plaintiff by the comment, and the timing and place of the comment.

47.    On April 25, 2013, Captain Bacher tells Plaintiff in the presence of a high-ranking supervisor, a Lieutenant Colonel, a civilian to Plaintiff, and Plaintiff's subordinate Sergeant Michael Chambers (hereafter as Sergeant Chambers) to "shut his mouth" during an employment meeting.

48.    Captain Bacher's comment humiliated and embarrassed Plaintiff.

49.    Captain Bacher intended to humiliate or embarrassed Plaintiff by the comment, and the timing and place of the comment.

50.    In or about November 2013, Sergeant Holt wins the first of three Federal jury trials. Sergeant Holt is awarded $50,000 at the first trial for race-based employment discrimination.

10

51.    On February 27, 2014, Plaintiff notifies Captain Bacher via email of possible Racial Profiling by a Trooper.

52.    Captain Bacher takes no action to stop the race profiling or follows up with Plaintiff to end the practice, but acquiesces to the racial profiling, and allows it to continue.

53.    On March 11, 2014, Plaintiff was excluded from attending the State Senate hearings involving the PSP's response to the "Valentine's Day" crash occurring in the King of Prussia patrol area garnering national attention.

54.    Among Plaintiff duties are to attend State Senate hearings involving PSP responses occurring in the King of Prussia patrol area.

55.    Captain Bacher has Lieutenant Murphy, and Plaintiff's subordinate, Sergeant Michael Chambers attend the Senate hearings.

56.    Captain Bacher's action, with the knowledge Lieutenant Colonel Bivens and Major Hokes to assign Whites to perform Plaintiff's duties humiliated and embarrassed Plaintiff.

57.    Captain Bacher intended to humiliate or embarrassed Plaintiff, to discriminate in the term and conditions of Plaintiff's employment, because of race, treat differently Plaintiff because of his race or class membership by the action to assign Whites to the Senate hearings.

58.    Plaintiff was humiliated and embarrassed when asked by his subordinates why he was excluded from attending the Senate hearings, particularly since co-worker Lieutenant Murphy was included and permitted to attend.

59.    Plaintiff was denied training and exposure into the political arena, which Whites were afforded.

60.    In or about May 2014, a *"semi-annual progress"* review was to be conducted and documented by Captain Bacher with the Plaintiff; however, same never occurs.  Semi-annual progress reviews by custom, practice, and PSP Policy, identify a subordinate's strengths, weaknesses, accomplishments, current progress etc., however, Captain Bacher intentionally fails to conduct a review with Plaintiff.

61.    On April 30, 2014, Plaintiff completed Sergeant Holt's yearly evaluation, and rates him "*outstanding*."

62.    Captain Bacher reviewed Plaintiff's evaluation of Sergeant Holt and concurs with assessment and indicates Sergeant Holt is an *"outstanding Field Commander."*

63.    On May 1, 2014, Captain Bacher excludes Plaintiff from an employment meeting concerning the Valentine's Day Crash; although Plaintiff before the meeting advised Captain Bacher he was available.

64.    Captain Bacher ignores Plaintiff and holds the meeting without Plaintiff, but with Plaintiff's subordinates, such as Sergeant Chambers.

65.    On June 1, 2014, Captain Bacher excludes Plaintiff from involvement in supervising a fatal crash involving a Turnpike employee in the King of Prussia patrol area.

66.    It is among Plaintiff's duties to be involved in supervising the fatal crash involving a Turnpike employee in the King of Prussia patrol area.

67.    Captain Bacher has Lieutenant Murphy, go to the crash scene in Plaintiff's place.

68.    Plaintiff asked Captain Bacher why Lieutenant Murphy was assigned, to which Captain Bacher chastised and demeaned Plaintiff for "questioning his authority and decision" and offers a pretextual reason for Lieutenant Murphy's attendance.

69.     Plaintiff was humiliated and embarrassed when asked by his subordinates why Lieutenant Murphy was in attendance, and he was not.

70.     On September 8, 2014, Plaintiff issues Sergeant Holt a positive Supervisor's Notation for his station's outstanding performance over the Labor Day Holiday Weekend.

71.     In or about September 2014, Plaintiff is excluded by Captain Bacher from participating in the manhunt for Eric Freign, who is the person that killed PSP Corporal Brian Dixon and seriously wounded another Trooper in Dunmore PA. However, Captain Bacher assigns all other White Lieutenants; a decision supported and promoted by Major Hoke, who also participated in the manhunt with Captain Bacher.

72.     Plaintiff's exclusion from the manhunt resulted in a loss of *"lifetime"* training opportunity, experience, overtime monies, and career advancement, to include promotion, within the PSP, and post PSP employment, as was afforded to the other White Lieutenants within Troop T, and other White command employees/personnel within the PSP.

73.     Plaintiff was humiliated and embarrassed by Captain Bacher's decision to exclude Plaintiff in the manhunt assignment. In that subordinates wished to know from Plaintiff why the entire command staff within Troop T, and other White command employees/personnel participated in the manhunt and not Plaintiff.

74.     On October 10, 2014, Plaintiff notified Major Hoke of the race discrimination and retaliation. Plaintiff explained being excluded from the manhunt and how Captain Bacher disrespects and mistreats Plaintiff. Further, saying Captain Bacher denies Plaintiff the same employment conditions and opportunities, and in comparison to the other White Lieutenants, treats them more favorably than the Plaintiff in similar situations.

75.     On October 16, 2014, Plaintiff eventually learns Sergeant Holt has a Roll Call at the Pocono Station with his subordinates in reference to a citizen complaint.  Sergeant Holt informs those in attendance the complaint was forwarded to the Internal Affairs Division (IAD). Thereafter, some in attendance become loud and belligerent, slam doors and challenge Sergeant Holt.  As a result of the unruly behavior, Sergeant Holt tells those in attendance, *"I could be like how the old sergeants were back in the day, when they would tell you we could just take off our shirts off and go into the garage and settle this like men."*

76.     On October 17, 2014, Sergeant Holt sends an email to his entire station apologizing to *"anyone"* who may have been offended by the Roll-Call.

77.     On October 19, 2014, Sergeant Holt attends his second Discrimination Federal Jury Trial, to wit, the PSP, Colonel Brown, Lieutenant Colonel Bivens, Major Hoke and Captain Bacher are aware. While away, Sergeant Holt's subordinates, Corporals Francis Aigeldinger, a White male and Jeremy Franklin, a White male sidestepped the PSP Chain-of-Command, a "known work rule violation," circumvent Plaintiff's authority as a Lieutenant and hold a secret meeting with Captain Bacher, which was about Sergeant Holt.

78.     Captain Bacher permits the Corporals to circumvent the Chain-of Command and Plaintiffs authority, to break the Chain of Command, a known "work rule violation" and willingly conducts the meeting with the Corporals. Thereafter, Captain Bacher consults with Lieutenant Murphy, excludes the Plaintiff from that consultation, although the subject matter of the consolation involves Plaintiff's duties and subordinate.

79.     Plaintiff avers and believes as custom and practice, Captain Batcher notifies his supervisor Major Hoke of Sergeant Holt's Roll Call and the meeting with the Corporals.

80.     In or around October 20, 2014, Captain Batcher contacts Director Morris to inquire if the information from the Corporals meeting is an EEO violation. Director Morris indicates there is no EEO violation.

81.     On October 27, 2014, Sergeant Holt attends his second Discrimination Federal Jury Trial, to wit, the PSP, Colonel Brown, Lieutenant Colonel Bivens, Major Hoke and Captain Bacher are aware.

82.     On October 29, 2014, approximately 10 days after the Roll Call incident, Captain Bacher meets with Plaintiff. Captain Bacher "officially" notifies Plaintiff of the Roll Call incident. Captain Bacher has Lieutenant Murphy present, viz although not Sergeant Holt's supervisor.

83.     Plaintiff is embarrassed and humiliated that Captain Bacher insists having Lieutenant Murphy present.

84.     In or about November 2014, Sergeant Holt is awarded 1.9 million dollars by the Jury at his second Federal employment discrimination trial.  Plaintiff learns Captain Bacher warns Sergeant Holt not to place PSP in a "negative light," when Sergeant Holt indicates he will be conducting a televised interview with NBC 10 News.

85.     In or about November 2014, Sergeant Holt conducts the interview with NBC 10 News, which is broadcasted to the public in the Philadelphia and Harrisburg areas.

86.     In or about November 2014, Captain Bacher initiates an IAD Complaint against Sergeant Holt for the Roll Call incident. Thereafter, Captain Bacher excludes Plaintiff and has Lieutenant Murphy schedule IAD interviews with Plaintiff's subordinate Troopers at the Pocono station, viz although not the Troopers supervisor.

87.     Plaintiff avers and believes as custom and practice, Captain Batcher notifies his supervisor Major Hoke an IAD was filed.

88.     Plaintiff is embarrassed and humiliated in front of subordinate Troopers and shows Captain Bacher's purposeful intent to exclude and humiliate Plaintiff when having Lieutenant Murphy schedule the interviews viz, although not their direct supervisor.

89.     In or about November 2014, Captain Bacher intentionally fails to provide Plaintiff with his yearly evaluation that is required underwritten PSP Policy.

90.     On December 23, 2015, Sergeant Holt sends Captain Batcher, Lieutenant Murphy and Plaintiff an email on how he believes he and the Plaintiff are being subject to disparate treatment.  Captain Batcher never responds to Plaintiff or Sergeant Holt.

91.     On January 8, 2015, Plaintiff sends an email to Captain Batcher requesting a meeting with the himself and Sergeant Holt.  Captain Batcher does not respond and ignores Plaintiff's request to meet.

92.     Plaintiff avers and believes Captain Batcher intentionally does not want to meet with Plaintiff and Sergeant Holt as he is subjecting Sergeant Holt and Plaintiff to disparate treatment.

93.     On January 20, 2015, Plaintiff is interviewed for the IAD Complaint initiated by Captain Bacher against Sergeant Holt for the Roll Call incident. Plaintiff provides factual, true and accurate information that is favorable to Sergeant Holt.

94.     On February 16, 2015, Sergeant David Devitt (hereafter as Sergeant Devitt), a White male emails Captain Batcher, Lieutenant Cain, Sergeant Chambers, Plaintiff and others an

article from the Lancaster Times. The article identifies possible racial profiling by Troopers on the Pennsylvania Turnpike.

95.     Captain Bacher has no meeting or discussions with Plaintiff, although he works at the most diverse station within Troop T, nor was there any correspondence disseminated throughout Troop T, addressing this issue.

96.     On February 23, 2015, Sergeant Holt is placed on Restricted Duty status from Captain Bacher and receives correspondence indicating same.

97.     On February 24, 2015, Sergeant Holt requests Plaintiff to have Captain Batcher add stipulations within the Restricted Duty correspondence for clarity purposes. Plaintiff agrees with Sergeant Holt's request, as same involves his supervision of Sergeant Holt and emails concerns/request to Captain Batcher. Captain Batcher ignores Plaintiff's email, and Sergeant Holt's request when not responding.

98.     On February 26, 2015, Sergeant Holt files an EEOO Complaint against Captain Bacher for race-based discrimination and retaliation, because of how Captain Bacher acted in regards to the Roll Call complaint, subsequent investigation, and discipline. Sergeant Holt provides Major Hoke, Director Morris and Plaintiff a copy of his complaint.

99.     On March 13, 2015, Captain Bacher un-expectantly retires.

100.     Plaintiff avers and believes Captain Batcher retires due to Sergeant Holt filing an EEOO Complaint against him and how he has mistreated Plaintiff. Plaintiff deduces this, as on February 4, 2015, Major Hoke openly relates during a Command Conference Captain Bacher was going to remain Captain of Troop T, for another year.

101.    On March 16, 2015, although an "*immediate*" Captain vacancy exists within Troop T, due to Captain Batcher's retirement, Colonel Brown and Lieutenant Colonel Bivens do not immediately promote a Captain into the vacant position, but permit Major Hoke to appoint/promote Captain Bacher's friend, Lieutenant Cain into the Acting Troop Commander (hereinafter as ATC) position. Colonel Brown, Lieutenant Colonel Bivens and Major Hoke place Lieutenant Cain into the position when knowing the Plaintiff is an African American male, senior Lieutenant in Troop T, senior to Lieutenant Cain by three (3) years as a Lieutenant, qualified for the position, Plaintiff's two (2) previous yearly evaluations show him as "outstanding," knowing the Plaintiff was never appointed into ATC position since Plaintiff's appointment into Troop T, July 2012, a violation of PSP policy.

102.    The acting ATC position, per PSP policy states in part, personnel who meet the minimum experience and training requirements of the higher-level position "*shall'* be temporarily assigned to that higher position when practicable.

103.    Plaintiff believes, thus avers that the appointment of Lieutenant Cain as the ATC is because of Plaintiff's race, Plaintiff's complaint of not being treated like his similarly situated white peers outlined above and knowing Plaintiff provides factual, true and accurate information that is favorable to Sergeant Holt during his IAD interview on January 20, 2015.

104.    Plaintiff's non-selection results in damages to the Plaintiff. Plaintiff is denied prestige by being denied the temporary position, real-time command training and experience, monetary compensation, and future employment, promotion and post-employment opportunities. Plaintiff is humiliated and embarrassed, particularly when co-workers and peers,

subordinates and other members in Troop T, ask why Plaintiff is not assigned into the ATC

position, although the most senior Lieutenant in Troop T.

105.    On March 16, 2015, Acting Captain Cain forwards Plaintiff an unsupported,

unjustified evaluation Lieutenant Cain knows or should know, is unjustified, likely employment

discrimination or retaliation; because the evaluation is authored by Captain Bacher on the day

of Captain Bacher's retirement and the evaluation is three (3) months overdue.

106.    On March 20, 2015, Plaintiff contacts Major Hoke via telephone for 30 minutes

about Lieutenant Cain and the evaluation authored by retired Captain Batcher. Plaintiff strongly

rebuked Captain Bacher's unsupported unjustified comments within, and notified Major Hoke

of the race discrimination and retaliation by Captain Bacher, being marginalized, embarrassed,

humiliated and treated adversely differently than his White peers.

107.    On March 23, 2015, Plaintiff writes a rebuttal to Major Hoke for Captain Bacher's

authored evaluation. Plaintiff relates his evaluation is not equal to his similarly situated White

peers, although is similar situations and the comments within were unjustified and unfounded.

Plaintiff also advises Major Hoke the semi-annual progress review that "*was to be conducted*" by

Captain Batcher never occurred, there is no documentation, and the date annotated on

Plaintiff's evaluation was fabricated by Captain Batcher, a PSP Policy violation.

108.    Plaintiff avers and believes had Captain Batcher conducted a semi-annual

progress review with him, Captain Batcher could not, and would not have placed the

unsupported unjustified comments within Plaintiff's annual evaluation.

109.    To rectify the situation, Plaintiff requests the inaccurate comments to be

redacted. The Bureau of Human Resources provides instructions to Major Hoke on how to

accomplish the redaction; however, Major Hoke intentionally fails to follow instruction and the information remains within Plaintiff's evaluation.

110.    On March 25, 2015, Plaintiff is interviewed by the employer on a PSP investigation into an EEOO Complaint that Sergeant Holt filed.   Plaintiff provides factual, accurate and correct information that is favorable to Sergeant Holt. For example, Plaintiff related that Sergeant Holt is mistreated by Captain Bacher, because of race and prior protected activity, which was to oppose employment discrimination within the PSP.  Plaintiff also includes Captain Bacher's mistreatment towards Plaintiff, as is described in the paragraphs above.

111.    The employer Interview and report is forwarded to the PSP/EEOO, Director Morris; however, no action or inquiry is initiated by CWOPA/PSP/EEOO, Director Morris concerning Plaintiff's mistreatment.

112.    On March 30, 2015, Plaintiff requests an audio copy of his taped interview on March 25, 2015, from Director Morris.  Director Morris declines Plaintiff's request although there is no PSP policy supporting his decision.

113.    On March 30, 2015, Major Hoke and Acting Captain Cain appoint/promote Lieutenant Bosch, into the ATC position knowing the Plaintiff is an African American male, senior Lieutenant in Troop T, senior to Lieutenant Bosch by six (6) years as a Lieutenant, qualified for the position, Plaintiff's prior evaluations show him as "outstanding," and knowing the Plaintiff was never appointed into ATC position since Plaintiff's appointment into Troop T, in July 2012, a violation of PSP policy.

114.    Plaintiff avers and believes the PSP, Major Hoke and Captain Cain know, seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

115.    Plaintiff's non-selection result in damages to the Plaintiff. Plaintiff is denied prestige by being denied the temporary position, real-time command training and experience, monetary compensation, and future employment, promotion and post-employment opportunities. Plaintiff is humiliated and embarrassed, particularly when co-workers and peers, subordinates and other members in Troop T, ask why Plaintiff is not assigned into the ATC position, although the most senior Lieutenant.

116.    On April 1, 2015, Plaintiff is interviewed a second time for the IAD Complaint initiated by Captain Bacher against Sergeant Holt. Plaintiff again provides factual, correct and accurate information that is favorable to Sergeant Holt.

117.    On April 15, 2015, Acting Captain Cain purposefully excludes Plaintiff when coordinating with other White Lieutenants (outside Troop T) and Plaintiff's subordinate, Sergeant Chambers about a vehicle pursuit occurring in Plaintiff's patrol area.

118.    Plaintiff was humiliated and embarrassed when excluded and not involved as other outside White Lieutenants were and when Sergeant Chambers asks Plaintiff of his non-involvement.

119.    Plaintiff notifies Major Hoke of his exclusion, which appears to be employment discrimination based on race and/or retaliation.

120.    In or about April 24, 2015, Lieutenant Colonel Bivens, Major Hoke and Acting Captain Cain exclude Plaintiff in the removal process and decision to remove Sergeant Holt from the Pocono station command, and to place Corporal Bruce Bailey, a Black male into the position.

121.    Plaintiff is provided no explanation by Lieutenant Colonel Bivens, Major Hoke and/or Acting Captain Cain before or after, the removal and replacement of Sergeant Holt.

122.    Customarily as a CWOPA/PSP employment practice, the supervisor of the subordinate to be removed and replaced is involved in the process and at least notified of the reason for removal and replacement. Plaintiff is told only that Corporal Bailey will assume command over the Pocono station.

123.    Plaintiff is embarrassed, humiliated and insulted that Captain Cain and Major Hoke exclude Plaintiff in the decision to have Corporal Bailey assume command, as Corporal Bailey is not the most qualified Corporal and Plaintiff would have chosen another Corporal if included in the decision-making process.

124.    Plaintiff avers and believes the exclusion, was due to employment discrimination based on race/or retaliation.

125.    In or about April 24, 2015, Plaintiff learns Acting Captain Cain, knowingly breaks the Chain of Command, a known *"work rule violation,"* when attempting to hold a secret meeting with Plaintiff's subordinate, Corporal Baily, without Plaintiff's knowledge.

126.    Plaintiff is embarrassed and humiliated, and must inform Corporal Bailey that all forms of communication must come through him, as per the Chain of Command policy.

127.    On April 25, 2015, Plaintiff learns Sergeant Holt files an internal EEOO Complaint against Acting Captain Cain, Major Hoke, and Lieutenant Colonel Bivens. The complaint is for his removal from the Pocono station command.

128.    On April 25, 2015, Plaintiff learns Sergeant Holt emails Colonel Brown about systemic discrimination and racism within the PSP and the policy performance failures within the PSP's EEOO, as every complaint he has filed within is dismissed; however, pass Federal summary judgement.  Sergeant Holt also complains about Lieutenant Colonel Bivens, Major Hoke and Acting Captain Cain.  Plaintiff is mentioned by Sergeant Holt in the complaint process and how the Plaintiff is being subjected to mistreatment.

129.    On or about April 25, 2015, Plaintiff learns Colonel Brown forwards Sergeant Holt's email complaint, also concerning Plaintiff, to EEOO/Director Morris.

130.    No action or contact is made with Plaintiff by Colonel Brown, EEOO, or Director Morris about the allegations made by Sergeant Holt involving the Plaintiff.

131.    On or about April 2015, Plaintiff is eligible under the existing promotional system or regulation and the Collective Bargaining Agreement for promotion for the rank of Captain. Captains are promoted by the discretion of the Commissioner, in consult with the Deputy Commissioners and not by a merit based testing section process, as ranks below Lieutenant.

132.    In or about April 2015, a Troop Field Command positon becomes available for a Captain in Troop R, upon the retirement of a Captain.  A Troop Field Command position is one of the most "*prestigious*," if not the most "*prestigious*" position within the PSP, as a Captain commands approximately 225-275 Troopers and civilian personnel.

133.    On April 25, 2015, "*immediately*" upon this Captain's retirement, Colonel Brown and Lieutenant Colonel Bivens pass over Plaintiff for promotion and promote one (1) White male Lieutenant to Captain of Troop R.

134.    Colonel Brown and Lieutenant Colonel Bivens know or should know that Plaintiff is qualified for promotion, Plaintiff's yearly evaluations were "outstanding," Plaintiff was the sole minority, Black, eligible employee to be promoted to Captain, has opposed employment discrimination by the PSP, aided Sergeant Holt to oppose employment discrimination within the PSP and further, that Plaintiff holds as Lieutenant senior status to the individual being promoted by (4) four years, as a Lieutenant.

135.    Plaintiff avers and believes the PSP, Colonel Brown and Lieutenant Colonel Bivens know, seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

136.    On April 26, 2015, Plaintiff emails Acting Captain Cain and Major Hoke of the discriminatory treatment he received from Captain Bacher. Further stated is the current culture of discriminatory exclusion and how Plaintiff was/is constantly discriminated against through marginalization and exclusion from decisions affecting his duties and responsibilities within his patrol section, i.e. Sergeant Holt's removal, police pursuit and Corporal Baily selection etc.

137.    Captain Cain does not respond to Plaintiff concerns.

138.    On April 28, 2015, Plaintiff is ordered to meet by and meets with Major Hoke for his April 26, 2015 email.  Major Hoke was furious Sergeant Holt's filed EEOO Complaint against him.

139.    Plaintiff informs Major Hoke of the current adverse employment actions taken against him, the constant exclusion and marginalization; not being treated like his similarly situated White peers and how the treatment is reminiscent of the treatment received from former Captain Bacher. Plaintiff also relates how minorities are routinely disrespected and marginalized within the PSP, and how his father (retired Sergeant) endured the same treatment from the PSP for 30 years.

140.    On May 13, 2015, Plaintiff completes and emails Sergeant Holt's yearly evaluation to Acting Captain Cain. Sergeant Holt is rated "outstanding." The rating is consistent with the information provided to Plaintiff, what Plaintiff observed, and is information available to Major Hoke, and is a rating consistent with previous "*outstanding*" evaluations for Sergeant Holt, wherein Captain Bacher stated Sergeant Holt is an *"outstanding Field Commander."*

141.    On May 21, 2015, Plaintiff is ordered to meet with Acting Captain Cain to discuss Plaintiff's rating of Sergeant Holt. Plaintiff believes the order is from Major Hoke. Plaintiff is pressured by Acting Captain Cain to lower Sergeant Holt's rating, but Plaintiff refuses.

142.    Plaintiff avers and believes after the meeting, then, Acting Captain Cain informs Major Hoke of Plaintiff's refusal to lower Sergeant Holt's evaluation, who then informs Lieutenant Colonel Bivens, and Colonel Brown.

143.    As of May 2015, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

144.    On May 21, 2015, approximately three hours after the meeting, Colonel Brown and Lieutenant Colonel Bivens pass over Plaintiff for promotion and "*immediately*" promote (2) two White male Lieutenants to Captain.

145.    Acting Captain Cain is promoted to Captain into the prestigious Troop T, Field Command positon with an open/active EEOO Complaint against him.

146.    It is an uncommon practice within the CWOPA/PSP to be promoted when the person to be promoted has an open/active EEOO Complaint alleging misconduct.

147.    Colonel Brown and Lieutenant Colonel Bivens know or should know that Plaintiff is qualified for both promotions, Plaintiff's previous yearly evaluations were "outstanding," Plaintiff was the sole minority, Black, eligible to be promoted to Captain within the entire PSP, has opposed employment discrimination by the PSP, aided Sergeant Holt to oppose employment discrimination within the PSP and further, that Plaintiff holds as a Lieutenant senior status to the individuals promoted by (3) three to (4) four years as a Lieutenant.

148.    Colonel Brown and Lieutenant Colonel Bivens know or should know seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

149.    Plaintiff avers and believes the PSP, Colonel Brown and Lieutenant Colonel Bivens know, seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

150.    On June 8, 2015, Plaintiff is ordered to meet with now, Captain Cain and Major Hoke to discuss plaintiff's rating of Sergeant Holt.

151.    Captain Cain and Major Hoke pressure Plaintiff to lower Sergeant Holt's rating. Plaintiff refuses.

152.    At this time, Sergeant Holt has prevailed in two employment discrimination trials, of wit, Colonel Brown, Lieutenant Colonel Bivens, Major Hoke and Captain Cain are aware.

153.    On June 10, 2015, Trooper Kevin Holland, a Black male requests Plaintiff to forward a "rebuttal" letter to Captain Cain due to a lowered yearly evaluation received from his previous supervisors, Corporal Christopher Hessler, a White male and Sergeant David Devitt, each of whom were under the command of then, Lieutenant Cain. Trooper Holland's correspondence also indicates he was treated adversely differently than his similarly situated White peers, which caused him to transfer from the Bowmansville station to the Pocono station in search of relief.

154.    Captain Batcher was aware of Trooper Holland's issues; however, took no action to investigate or mitigate the adverse actions claimed by Trooper Holland, thus his transfer.

155.    Plaintiff eventually learns an EEOO investigation is initiated/conducted by EEOO Liaison Murphy who intentionally fails to interview potential witness provided by Trooper Holland. Thereafter the Report is forwarded to Director Morris who dismisses Trooper Holland's complaint. Sergeant Devitt is later promoted to Lieutenant.

156.    On June 23, 2015, Captain Cain, with the concurrence of Major Hoke, disagrees with Plaintiff's evaluation rating of Sergeant Holt and writes a scathing opinion indicating Sergeant Holt is "*unsatisfactory*," which rating is inaccurate, untrue, and the lowest available rating category.

157.    Captain Cain's comments were from a distant optic, as Captain Cain *"never directly supervised"* Sergeant Holt and could not, and should not have commented, but for and to support the false narrative of the PSP.

158.    On June 24, 2015, Major Hoke and Captain Cain appoint/promote Lieutenant Murphy, a White male into the ATC position knowing the Plaintiff is an African American male, has opposed employment discrimination by the PSP, aided Sergeant Holt to oppose employment discrimination within the PSP, was the senior Lieutenant in Troop T, senior to Lieutenant Murphy by (4) four years as a Lieutenant, qualified for the position, Plaintiff's two (2) previous yearly evaluations show him as "outstanding," and knowing the Plaintiff was never appointed into ATC position since Plaintiff's appointment into Troop T, in July 2012, a violation of PSP policy.

159.    Plaintiff avers and believes the PSP, Major Hoke and Captain Cain know, seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

160.    Plaintiff's non-selection results in damages to the Plaintiff. Plaintiff is denied prestige by being denied the temporary position, real-time command training and experience, monetary compensation, and future employment, promotion and post-employment opportunities. Plaintiff is humiliated and embarrassed, particularly when co-workers and peers, subordinates and other members in Troop T ask why Plaintiff is not assigned into the ATC position, although the most senior Lieutenant.

161.     On July 1, 2015, Plaintiff is again interviewed for Sergeant Holt's EEOO Complaint. Plaintiff again provides factual, accurate and correct information that is favorable to Sergeant Holt. Plaintiff "*again*" relates he was mistreated by Captain Bacher as well.

162.     Plaintiff's re-interview information is forwarded to EEOO/Director Morris; however, no action or inquiry is initiated concerning Plaintiff's mistreatment.

163.     In or about July 2015, Captain Cain, by custom, practice and PSP Policy is to conduct a *"semi-annual progress"* review with the Plaintiff; however, same never occurred, a violation of PSP Policy.

164.     In or about September 15, 2015, Captain Cain and Major Hoke author a negative Captain endorsement against the Plaintiff for a promotion to the rank of Captain. The endorsement is in complete contrast to the Plaintiff's previous two annual evaluations, which show him as "*outstanding*".

165.     Endorsements by custom, practice, and/or policy of the PSP are sent to the Commissioner of the PSP for promotions. The endorsement is ultimately forwarded to, and soon to be Colonel Blocker, who acts on the endorsement.

166.     Plaintiff believes and avers same was done for opposing employment discrimination by the PSP, his engagement in protected activities and refusing to lower Sergeant Holt's yearly evaluation.

167.     On September 22, 2105, Plaintiff is again interviewed for Sergeant Holt's EEOO Complaint. Plaintiff provides factual, correct and accurate information favorable to Sergeant Holt and adverse to the CWOPA/PSP.  Plaintiff "*again*" relates the mistreatment perpetrated against him by Captain Bacher.

29

168.     Plaintiff's information is forwarded to EEOO/Director Morris. However, no action or inquiry was initiated concerning Plaintiff's mistreatment.

169.     On October 24, 2015, Plaintiff testifies under oath truthfully and accurately for Sergeant Holt in an Arbitration Hearing; whereas the CWOPA/PSP is an adverse party to Sergeant Holt.   Plaintiff testifies favorable for Sergeant Holt and adverse to the CWOPA/PSP.

170.     On October 26, 2015, Plaintiff files a PSP internal EEOO Complaint, #48-2015. The complaint is filed with the EEOO/Director Morris. The complaint alleges employment discrimination because of race and retaliation for opposing employment discrimination and aiding in the opposition of employment discrimination. Such as, the facts Plaintiff presents in the above paragraphs.

171.     Plaintiff specifically complained about employment discrimination, that he as an African-American member of the PSP is not assigned to an ATC position since July 2012, and there was no minority Black Captain Field Commanders in the "*prestigious*" Troop Field Command positions with the entire PSP.

172.     Plaintiff avers and believes, as per PSP Policy, Captain Cain and Major Hoke were notified of Plaintiff's complaint filing and protected activity.

173.     On November 20, 2015, twenty-five (25) days after Plaintiff files his EEOO Complaint to the EEOO and Director Morris, Major Hoke and Captain Cain appoint/promote Lieutenant Murphy into the ATC position knowing the Plaintiff is an African American male, senior Lieutenant in Troop T, senior to Lieutenant Murphy by four (4) years as a Lieutenant, qualified for the position, Plaintiff's two (2) previous yearly evaluations show him as

"outstanding," and knowing the Plaintiff was never appointed into ATC position since Plaintiff's appointment into Troop T, in July 2012, a violation of PSP policy.

174.    Plaintiff avers and believes the PSP, Major Hoke and Captain Cain know, seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

175.    Plaintiff's non-selection result in damages to the Plaintiff. Plaintiff is denied prestige by being denied the temporary position, real-time command training and experience, monetary compensation, and future employment, promotion and post-employment opportunities. Plaintiff is humiliated and embarrassed, particularly when co-workers and peers, subordinates and other members in Troop T ask why Plaintiff is not assigned into the ATC position, although the most senior Lieutenant.

176.    The EEOO, Director Morris and Major Hoke were specifically aware of the Plaintiff's desire to be an ATC, appointment to the ATC position, and of not being appointed to an ATC position, because Plaintiff told them. However, as of October 26, 2015, no action was initiated by anyone in CWOPA/PSP concerning Plaintiff's non-appointment.

177.    On November 20, 2015, Captain William Arndt (hereinafter as Captain Arndt) interviews Plaintiff about Plaintiff's EEOO Complaint #48-2015 filed on October 26, 2016. Plaintiff specifically indicates he has never been assigned to the ATC position since July 2012, and there are no minority, Black Captain Field Commanders in PSP.

178.    On November 30, 2015, Plaintiff submits correspondence to the EEOO, Director Morris and Captain Arndt. Plaintiff re-states being subjected to employment race discrimination and retaliation, because he has aided Sergeant Holt, cooperated in the investigation in Sergeant

31

Holt's EEOO Complaints and never been assigned into the ATC position since July 2012, a violation of PSP policy, and there are no minority, Black Captain Field Commanders in the entire PSP.

179.    On December 4, 2015, Plaintiff requests a copy of the Captain's Endorsement for promotion from Captain Cain and Major Hoke.  Captain Cain does not respond.

180.    Major Hoke responds and denies Plaintiff's request although no policy exists to foreclose providing the copy to Plaintiff, and it would be evidence for Plaintiff on his discrimination complaint.

181.    On December 8, 2015, Plaintiff notifies the EEOO, Director Morris of Major Hoke's denial and relates he believes his Captain endorsement is not equal or better that his similarly situated White peers/co-workers, although outperforming them.

182.    On December 21, 2015, Plaintiff receives a scathing lowered yearly evaluation rating from Captain Cain and Major Hoke.  Plaintiff's rating drops two categories from "*outstanding,*" to "*satisfactory*" and "*needs improvement,*" in complete contrast to Plaintiffs 2013 and 2014 evaluations indicating he is *"outstanding,"* the highest category attainable.

183.    Plaintiff avers and believes his yearly evaluation was intentionally lowered as he opposed employment discrimination by the PSP, aided Sergeant Holt to oppose employment discrimination within the PSP, engaged in protected activities and refused to lower Sergeant Holt's yearly evaluation. Additionally, Plaintiff believes his evaluation is not similar to his similarly situated White peers/coworkers, although outperforming them.

184.    As example, then, Lieutenant Cain *"did not"* receive a scathing lowered evaluation from Captain Bacher and Major Hoke, although they knew or should have known

Lieutenant Cain had supervisory and morale issues with two (2) White sergeants (Zigmund Jendrzejewski and David Devitt) under Cain's command, which ultimately resulted in Trooper Holland filing an EEOO Complaint on June 10, 2015, for his lowered evaluation.

185.    On January 4, 2016, Plaintiff files a grievance for his lowered evaluation. Captain Cain fails to respond to the Plaintiff's grievance within the applicable timeframes outlined the Collective Bargaining Agreement.

186.    On January 6, 2016, Plaintiff filed another internal EEOO Complaint with the EEOO/Director Morris against Captain Cain and Major Hoke. The complaint is for employment discrimination, particularly, the intentional lowering of Plaintiff annual evaluation because of Plaintiff's race and making a prior EEOO Complaint, aiding Sergeant Holt in his EEOO Complaint or providing sworn truthful testimony and/or information that was favorable to Sergeant Holt and adverse to the PSP and its members.

187.    On January 25, 2016, Plaintiff, out of fear of future retaliation, inquired of Director Morris whether Captain Cain and Major Hoke are notified of Plaintiff's complaints filed. Director Morris tells Plaintiff they were notified.

188.    On January 27, 2016, Plaintiff writes a rebuttal opinion to the lowered yearly evaluation that Plaintiff received on December 21, 2015. Plaintiff sends the rebuttal to Captain Cain and the EEOO, Director Morris. Plaintiff addresses the inaccurate information within, as well as, identifying that no semi-annual progress review occurred, or was documented in or about July 2015, and the date annotated on the Plaintiff's evaluation was fabricated by Captain Cain, a PSP Policy violation.

189.    Plaintiff's rebuttal states, "it is my desire to resolve this matter in an amicable and professional manner, so as to meet the goals and objectives of the PSP."

190.    Plaintiff is not contacted to discuss his request or rectify his lowered evaluation by Captain Cain Major Hoke or Director Morris.

191.    On or about February 2016, Plaintiff is again eligible under the existing promotional system or regulation, and Collective Bargaining Agreement, for promotion to the rank of Captain.

*192.*    On February 13, 2016, newly appointed Colonel Blocker, transfers two (2) minority, Black Captains (Male/Female) and (1) one White Female Captain from their marginalized positions within the PSP into the "*prestigious*" Troop Field Command positions. Colonel Blocker makes the transfers when knowing or should know the individuals have *"no Troop Field Command experience."*

193.    Plaintiff avers and believes the transfers were made, as Colonel Blocker recognized there was no minority, Black or female Captains in the "*prestigious*" Field Command positions in PSP, as Plaintiff stated in his EEOO Complaint #48-2015, filed on October 26, 2015.

194.    As of February 2016, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

195.    On February 13, 2016, Plaintiff was passed over for promotion by Colonel Blocker who promotes (8) eight White male Lieutenants and (1) one minority, Black male Lieutenant to Captain. Colonel Blocker knew or should have known Plaintiff was senior (as a Lieutenant) to (7) seven of the (9) nine Lieutenants promoted, had working knowledge of three of the positions

the others were promoted into and was senior to the sole minority, Black male by (6) six years, who had a disciplinary record, when the Plaintiff did not.

196.    Plaintiff avers and believes a motivating or substantial reason why Plaintiff is not promoted is due to cooperating in the investigations by the PSP of Sergeant Holt's EEOO Complaint(s), Plaintiff's aid to Sergeant Holt, aided Sergeant Holt who has successfully sued the PSP in Federal court for race discrimination within and retaliation by the PSP and its members, Plaintiff filing an internal EEOO Complaint opposing employment discrimination and retaliation, that none of the promoted individuals filed an EEOO Complaint for discrimination and retaliation, testified as a witness due to employment discrimination. Plaintiff also believes he is passed over for promotion due to the negative Captain endorsement, and the scathing lowered evaluation he received on December 21, 2015, by Captain Cain and Major Hoke, which was motivated by Plaintiff's race and protected activities under Title VII, the PA Human Relations Act, and U.S. Constitution.

197.    On February 19, 2016, Plaintiff notifies Director Morris of manipulative, biased deceptive investigative tactics by Captain Arndt, when failing to interview Sergeant Michael Friedrich, a White male and witness, in accordance with PSP Policy.

198.    Director Morris acknowledges Plaintiff's concerns about Captain Arndt's behavior, acquiesces, and has Sergeant Friedrich interviewed as per PSP policy.

199.    On February 26, 2016, Plaintiff notifies the EEOO, Director Morris of possible Racial Profiling by a White Trooper on traffic stops; however, no action or inquiry was taken about Plaintiff's concerns.

200.    On April 12, 2016, Plaintiff meets with Colonel Blocker. Plaintiff advises Colonel Blocker of the "*current issues*" with Captain Cain and Major Hoke, and Plaintiff's desire to be promoted into a Troop Field Command position, as he has Field Command experience.

201.    On April 18, 2016, Plaintiff, out of fear of future retaliation and discrimination "*again*" inquires of Director Morris if Captain Cain and Major Hoke were notified of Plaintiff's complaint, as he has yet to be appointed into the ATC position. Director Morris relates they were notified.

202.    On May 20, 2016, Plaintiff learns Sergeant Holt submits correspondence to Governor Thomas Wolf and complains about systemic discrimination and racism within the PSP and problems within the PSP EEOO.   Sergeant Holt's complaint also mentions Plaintiff's mistreatment by the PSP.

203.    Plaintiff avers and believes; Governor Wolf directly or indirectly informs Colonel Blocker of correspondence received.

204.    On May 25, 2016, Plaintiff is denied construction zone overtime by Captain Cain and Major Hoke; although, they permitted the Plaintiff to work overtime in 2014 and 2015, as did then, Lieutenant Cain work the overtime. Plaintiff's denial resulted in approximately 130 hours of loss of overtime.

205.    On May 27, 2016, Plaintiff notifies Director Morris of the casual connection to his protected activity and the perceived retaliation and discrimination by being denied overtime by Captain Cain and Major Hoke; however, no action is taken to stop or cure the discrimination.

206.    On June 16, 2016, Plaintiff files another internal EEOO Complaint #16-2016. The complaint is for being denied overtime and for an Anti-Semitic remark made by EEOO Liaison

Trainer, Lieutenant Murphy, a White male, during an EEOO training class.  Plaintiff also again references his lowered evaluation, as he has yet to be interviewed for same, and for his non-appointment into the ATC position.

207.    Plaintiff also contacts Director Morris and relates his belief there is a Policy performance failure within the EEOO, due to continued acts of retaliation that have occurred and continue to occur against the Plaintiff and others making complaints of employment discrimination with no intervention to stop and/or cure the discrimination.

208.    Director Morris relates to Plaintiff there was no requirement to file with the PSP's EEOO and Plaintiff has the right to *"file with an outside agency."*

209.    On June 20, 2016, four (4) days after contacting Director Morris, Major Hoke and Captain Cain appoint/promote Lieutenant Murphy into the ATC position for a *"(2) two-week period,"* knowing the Plaintiff opposed employment discrimination by the PSP, that each were notified by Director Morris of Plaintiff's complaint, that each were contacted and interviewed by Captain Arndt, that Plaintiff is an African American male, was qualified, the senior Lieutenant in Troop T, and knowing the Plaintiff was never appointed into ATC position since Plaintiff's appointment in July 2012, a PSP policy violation.

210.    Plaintiff avers and believes the PSP, Director Morris, Major Hoke and Captain Cain know, seniority and qualifications are a primary factor used to promote one person over another with better, equal or near equal qualifications.

211.    Plaintiff's non-selection result in damages to the Plaintiff. Plaintiff is denied prestige by being denied the temporary position, real-time command training and experience, monetary compensation, and future employment, promotion and post-employment

opportunities. Plaintiff is humiliated and embarrassed, particularly when co-workers and peers, subordinates and other members in Troop T, ask why Plaintiff is not assigned into the ATC position, although the most senior Lieutenant.

212.    Plaintiff avers and believes, the EEOO, Director Morris were specifically aware Plaintiff's oppositions and concerns of employment discrimination within the PSP, by Defendants, Major Hoke and Captain Cain, on before and after 10/26/15, 11/20/15, 11/30/15, 01/25/16, and 04/18/16; and that no action is initiated by PSP, Director Morris to prevent, mitigate, or end the adverse employment actions.

213.    On July 11, 2016, Plaintiff, filed a Federal EEOC Complaint that alleged discrimination because of race and retaliation. Plaintiff identified the acts that were done because of race and are retaliatory.  Plaintiff describes in the charge the events set forth in this complaint. Plaintiff named to the EEOC those persons named in this complaint.

214.    On July 12, 2016, Plaintiff is interviewed on the internal EEOO Complaint #16-2016, filed on June 16, 2016, which concerned the Anti-Semitic remark made by EEO Liaison Lieutenant Murphy. The PSP interview did not include any questions about the lowered evaluation or denial of construction zone overtime, which were part of Plaintiff's anti-Semitic EEO complaint filed.

215.    Plaintiff avers and believes no questions were asked about discrimination or retaliation against the Plaintiff intentionally, so as to prevent Plaintiff from providing additional information in reference to his EEOO Complaint #48-2015 filed on October 26, 2015, specifically pertaining to his intentionally lowered annual evaluation.

216.     On July 13, 2016, Plaintiff brought to the attention of, and *"again"* requests Director Morris to remove Captain Arndt from investigating Plaintiff's EEOO Complaint #48-2015, due to learned ex-parte communications occurring with Captain Cain and Major Hoke and for the inappropriate manipulative investigative actions. Director Morris declined Plaintiff's request and takes no action to have Plaintiff's complaint promptly or properly investigated.

217.     In or about July 18, 2016, Plaintiff is subjected to retaliation, when Captain Cain and Major Hoke initiate an IAD Complaint against the Plaintiff asserting insubordination.

218.     On July 21, 2016, Plaintiff is offered a façade promotional offer from Colonel Blocker into a *"newly created"* position within the Bureau of Records & Development, a non-Field Command Position, which is far *"less prestigious,"* as one only supervises 10-15 Troopers and civilian personnel vs. 225-275 Troopers and civilian personnel, as is a Troop Field Command position. Additionally, the *"newly created"* position/location is historically known for being a precursor to a disciplinary position, as same is approximately 100 feet from Colonel Blocker's office.

219.     Due to this known information and the fact Plaintiff is aware a vacancy is now open, and available in Troop T, he declines the position offered and specifically tells Colonel Blocker he is being "*marginalized*, and is "disappointed;" however, "hopefully down the line, I will have another opportunity." Unfortunately, Plaintiff is never given another opportunity, as Colonel Blocker continues to retaliate against the Plaintiff for his engagement in protected activities when passed over for promotion on three more occasions.

220.    After Plaintiff declines the façade promotional offer, Colonel Blocker transfers a current Captain into the position for disciplinary reasons. This Captain ultimately receives a *"Dishonorable Discharge"* upon his retirement for his misconduct.

221.    Plaintiff avers and believes the façade promotional offer was a rouse and done as Plaintiff cooperated in the investigations by the PSP of Sergeant Holt's EEOO Complaint(s), Plaintiff's aid to Sergeant Holt, aided Sergeant Holt who has successfully sued the PSP in Federal court for race discrimination within and retaliation by the PSP and its members, Plaintiff filing an internal EEOO and external EEOC Complaint, opposing employment discrimination and retaliation.

222.    On July 29, 2016, Plaintiff provides strong evidence to Director Morris of the pretextual excuse by Major Hoke and Captain Cain to purposefully excluded Plaintiff from construction zone over time. No action is taken by Director Morris.

223.    On August 3, 2016, Captain Arndt interviews Plaintiff for his EEOO Complaint #48-2015-A, filed on June 16, 2016. Plaintiff is interviewed despite his stated concerns to Director Morris about Captain Arndt's nefarious conduct and Plaintiff's request to have him recused. During the interview, Captain Arndt provides Captain Cain and Major Hokes pretextual excuse why he was not appointed into the ATC positon, that is… *"it was not practicable."* Additionally, Plaintiff learns Director Morris, through Colonel Blocker wants an explanation as to "why" Plaintiff declined the promotional offer to Captain on July 21, 2016; however, Plaintiff provides no explanation to Captain Arndt. Lastly, as concerned, Captain Arndt knowingly fails to ask Plaintiff one question about his lowered yearly evaluation received by Captain Cain and Major Hoke.

224.     Plaintiff avers and believes the pretextual reason provided by Captain Cain and Major Hoke, identifies their purposeful intent to retaliate and discriminate against Plaintiff because of his race, for opposing employment discrimination, aiding Sergeant Holt to oppose employment discrimination, and for engaging in protected activities. Additionally, Captain Arndt's omission and the investigative tactic is done to protect Captain Cain and Major Hoke for their retaliatory acts, and the practice of the CWOPA/PSP to discriminate in employment.

225.     In or about August 4, 2016, Plaintiff, by way of Colonel Blocker and Lieutenant Colonel Christie is ordered to meet with Major Hoke at Department Headquarters for the unwarranted IAD Complaint filed against the Plaintiff for insubordination filed on July 18, 2016.

226.     When reporting, Plaintiff is unaware Captain Cain and Director Morris will be present, which is not, and would not, be usual or customary under the circumstances.

227.     During the meeting, Captain Cain makes a res-gestae statement of "*I cannot talk to you, as you've filed so many EEO Complaints*." Albeit, Captain Cain would not speak to Plaintiff on the subject matter of the IAD filed.

228.     Plaintiff avers and believes, Colonel Blocker recognizes the retaliatory act, as other supervisory methods were available by Captain Cain and Major Hoke to speak with Plaintiff "*before*" the IAD charge was initiated. Furthermore, Plaintiff believes Colonel Blocker caused Captain Cain and Director Morris to be aware of this meeting date, to be present, so as to interfere and prevent Plaintiff from presenting evidence of a hostile work environment against Captain Cain and Major Hoke.

229.     On August 13, 2016, through reorganization and transfers, Captain Cain and Major Hoke are no longer in Plaintiff's Chain of Command.

230.    As of August 2016, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

231.    On August 13, 2016, Plaintiff is passed over for promotion by Colonel Blocker who promotes (3) three White male Lieutenants to Captain, one of which, had a disciplinary record, when the Plaintiff did not. Plaintiff was senior (as a Lieutenant) to (2) two of Lieutenants promoted by (2) two to (6) six years as a Lieutenant and equal to (1) one Lieutenant in seniority (as a Lieutenant).

232.    The one individual Lieutenant who is equal in seniority to the Plaintiff, Lieutenant Paul Gustaitis (hereafter as Captain Gustaitis) is promoted into the "*prestigious*" Troop Field Command position within Troop T, due to PSP Department reorganization.

233.    Plaintiff avers and believes he is more qualified than Lieutenant Gustaitis and is denied promotion to Captain because of race and but for, or substantially motivated because of plaintiff's prior protected activities.

234.    On August 31, 2016, EEOO Assistant Director Tran issues Plaintiff a determination finding on EEOO #16-2016, in reference to EEOO Liaison, Lieutenant Murphy's anti-Semitic remark. The finding is the complaint is sustained. However, EEOO Liaison Lieutenant Murphy is not formally disciplined, reduced in rank, position, or pay, but rewarded by CWOPA, Colonel Blocker and Lieutenant Colonel Christie, in that, he is appointed to attend the prestigious Northwestern Police Training Academy shortly thereafter. Plaintiff learns Sergeant Holt applied for the same prestigious training; however, was denied.

235.     On September 21, 2017, Plaintiff, under new leadership is finally appointed to the ATC position by Major Maynard Grey (hereinafter as Major Grey) and Captain Gustaitis.

236.     October 5, 2016, the PSP responds to the EEOC for the Plaintiff's EEOC Complaint filed on July 11, 2016. The PSP states in part, the *"PSP has created an environment within which members and employees have the opportunity to progress as far as their abilities and job opportunities will take them. In that spirit, the PSP simply will not tolerate discrimination in the workplace, and the Department is hopeful that after careful review, the EEOC will agree no discrimination or retaliation occurred."*

237.     The PSP's response to the EEOC was premature and incomplete, as the PSP "*did not*" complete the Plaintiff's investigation EEOO #48-2015, until November 21, 2016, 45 days "*after*" responding to the EEOC.   Furthermore, when responding, the PSP provided false misleading information to the EEOC when giving a pretextual excuse why the Plaintiff was not appointed to the ATC Position. PSP references Lieutenant Gustaitis, who "*was not"* assigned to Troop T, until August 13, 2016, when Plaintiff was passed over for the ATC position - multiple times, since 2012. Lastly, the PSP's pretextual excuse is in complete contrast to the pretextual excuse Plaintiff is provided by Captain Arndt when interviewed on August 3, 2016.

238.     Plaintiff avers and believes the PSP intentionally provided false misleading information to the EEOC with the desire to obtain "no cause" finding, and to continue to discriminate and retaliate against the Plaintiff as he opposed employment discrimination by the PSP, aided Sergeant Holt to oppose employment discrimination within the PSP, engaged in protected activities and refused to lower Sergeant Holt's yearly evaluation.

239.        On November 21, 2016, Director Morris dismisses Plaintiff's EEOO Complaint #48-2015, filed on October 26, 2015. The dismissal is 391 days after the initial complaint is filed on October 26, 2015. Director Morris dismisses the complaint knowing Captain Arndt did not interview Plaintiff about his lowered yearly evaluation, and that the Plaintiff was never appointed to the ATC position - multiple times.

240.        Plaintiff is advised by Director Morris that an appeal of his decision can be taken to Lieutenant William Brown (hereinafter as Lieutenant Brown), a direct subordinate of Lieutenant Colonel Christie.

241.        Plaintiff avers and believes the PSP intentionally delayed their findings as Plaintiff is eligible to retire, and no policy exists within the EEOO to adjudicate cases within a specific timeframe per the Collective Bargaining Agreement, as is with IAD Complaints.

242.        On or about December 5, 2016, Plaintiff advises Director Morris that Lieutenant Brown does not have the requisite qualifications, training in EEO matters and or Title VII laws. Director Morris responds, *"there is no training requirement."*

243.        On December 5, 2016, Plaintiff receives an "*outstanding*" yearly evaluation from Captain Gustaitis and Major Grey. The evaluation is in complete contrast to the evaluation received from Captain Cain and Major Hoke, but Plaintiff is doing the same duties and work. There is no additional or new training provided to Plaintiff on how to perform the duties and work.

244.        As of December 2016, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

44

245.    On December 6, 2016, Colonel Blocker disseminates correspondence indicating one (1) White male Lieutenant will be promoted to Captain effective Dec 31, 2017.

246.    On December 9, 2016, Plaintiff appeals Director Morris' EEOO Complaint #48-2015 determination to Lieutenant Brown although not qualified.

247.    On December 21, 2016, Plaintiff files an internal EEOO Complaint #35-2016 against Colonel Blocker, Major Hoke and Captain Cain. The complaint is for non-promotion that will occur on December 31, 2016, and for the unwarranted IAD complaint filed against the Plaintiff by Major Hoke and Captain Cain on July 18, 2016.

248.    Director Morris acknowledges Plaintiff's complaint; however, against PSP policy intentionally does not provide an EEOO tracking number, fails to notify Plaintiff of his rights to file a complaint with an outside agency and fails to advise the Plaintiff who will be the assigned investigator.

249.    Plaintiff avers and believes Director Morris intentionally fails to notify Plaintiff of his rights to file with an outside agency, so as to prevent and discourage Plaintiff from seeking relief outside of the PSP and to control the outcome of the internal EEOO investigation.

250.    Plaintiff unaware an investigation is being conducted; later learns on May 9, 2017, the assigned investigator is Assistant Director Tran, Director Morris' subordinate, a known conflict of interest. Assistant Director Tran conducts the investigation without the Plaintiff's knowledge.

251.    On December 31, 2016, Plaintiff is passed over for promotion by Colonel Blocker, who promotes one (1) White male Lieutenant to Captain. Colonel Blocker knows Plaintiff is the senior Lieutenant in the PSP, sole minority, Black eligible employee remaining in the PSP, senior

(as a Lieutenant) to this individual promoted by (6) six years, never disciplined, and recently received an "outstanding" annual evaluation on December 5, 2016.

252.    Plaintiff avers and believes this individual is promoted over the Plaintiff, as he has cooperated in the investigations by the PSP of Sergeant Holt's EEOO Complaint(s), aided Sergeant Holt who has successfully sued the PSP in Federal court for race discrimination within and retaliation by the PSP and its members, Plaintiff filing an internal EEOO and external EEOC Complaint, opposing employment discrimination and retaliation when the person promoted did not.

253.    As of January 2017, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

254.    On January 11, 2017, Colonel Blocker disseminates correspondence indicating six (6) White males Lieutenants and two (2) White female Lieutenants will be promoted to Captain effective January 28, 2017.

255.    On January 13, 2017, Plaintiff later learns Assistant Director Tran completes his investigation into Plaintiff's EEOO Complaint #35-2016 filed on December 21, 2016, without his knowledge or interview. Lieutenant Tran's findings and report are forwarded to Director Morris. Director Morris accepts the report knowing Lieutenant Tran failed to interview Plaintiff, which is a violation of PSP Policy and Governors Management Directive 410.10 (hereinafter as MD 410.10).

256.    On January 24, 2017, Plaintiff files an internal EEOO Complaint #15-2017 against Colonel Blocker.  The complaint is for non-promotion that will occur January 28, 2017.

257.     Director Morris acknowledges Plaintiff's complaint; however, "*again*," against PSP policy, intentionally does not provide an EEOO tracking number, fails to notify Plaintiff of his rights to file a complaint with an outside agency and fails advise the Plaintiff who will be the assigned investigator.

258.     Plaintiff avers and believes Director Morris intentionally fails to notify the Plaintiff of his rights to file with an outside agency, so as to prevent and discourage Plaintiff from seeking relief outside of the PSP and to control the outcome of the internal EEOO investigation.

259.     Plaintiff unaware an investigation is being conducted; later learns that Assistant Director Tran assigns EEOO Liaison David Gouldy to conduct the EEOO #15-2017 investigation.

260.     On January 28, 2017, Plaintiff is passed over for promotion by Colonel Blocker, who promotes six (6) White male Lieutenants and two (2) White female Lieutenants to Captain, one of which has a disciplinary record.  Colonel Blocker knows Plaintiff is the senior Lieutenant in the PSP, sole minority, Black eligible employee remaining in the PSP, senior (as a Lieutenant) to those individuals promoted by approximately (4) four to (9) nine years, never received formal discipline, and recently received an "outstanding" annual evaluation on December 5, 2016.

261.     Plaintiff avers and believes these individuals are promoted over the Plaintiff, as he has cooperated in the investigations by the PSP of Sergeant Holt's EEOO Complaint(s), aided Sergeant Holt who has successfully sued the PSP in Federal court for race discrimination within and retaliation by the PSP and its members, Plaintiff filing an internal EEOO and external EEOC Complaint, opposing employment discrimination and retaliation when the persons promoted did not.

262.     One of the individuals promoted to Captain by Colonel Blocker is Lieutenant Michael Witmer (hereinafter as Director Witmer). Colonel Blocker promotes Captain Witmenr into the EEOO, knowing Lieutenant Witmer had no prior experience or training to be the Director of EEOO and having no qualifications in EEOO matters/Title VII Laws.

263.     Colonel Blocker also awards and promotes Director Morris from Captain to Major and places him in charge IAD Unit. Both the EEOO and IAD offices are supervised by Lieutenant Colonel Christie, Colonel Blocker's subordinate.

264.     On February 2, 2017, Plaintiff learns Sergeant Holt is contacted by Assistant Director Tran and Director Witmer in reference to correspondence submitted by Trooper Buchanon, the sole Black male assigned to the Philadelphia Vice Unit on December 2, 2016. Trooper Buchanon's correspondence complains about unfair treatment, a hostile work environment and a Quid Pro Quo situation while working in the Vice Unit.

265.     Sergeant Holt responds to Assistant Director Tran and to Lieutenant Colonel Christie about the correspondence, outlines his concerns on how Trooper Buchanon was/is treated and how he is concerned, no official investigation has been conducted into Trooper Buchanon's outlined concerns.

266.     Assistant Director Tran nor Lieutenant Colonel Christie respond to Sergeant Holt, and no official investigation is conducted into Trooper Buchanon's allegations.

267.     On February 24, 2017, Plaintiff was interviewed for an internal EEOO Complaint that is filed by his subordinate Sergeant Chambers. The complaint is for Gender Discrimination/Retaliation. Plaintiff provided factual information favorable to Sergeant Chambers.

268.        On February 28, 2017, Plaintiff was subjected to a drug test by the PSP.

269.        Plaintiff avers and believes same was done to intimidate and retaliate against him for his engagement in protected activities.

270.        On March 22, 2017, after filing an appeal with Lieutenant Brown on December 9, 2016, Plaintiff contacts Lieutenant Brown to inquire when he anticipates rendering a decision into his appeal, as there have been no status updates from Lieutenant Brown for 96 days. Lieutenant Brown does not provide an anticipated date, but tersely responds *"As soon as I am completed with my review I will advise you of the outcome."*

271.        Plaintiff avers and believes the PSP, EEOO and Lieutenant Brown are intentionally delaying their findings as Plaintiff is eligible to retire, and there is no legit non-discriminatory reason for the excessive delay, especially knowing Lieutenant Brown does not have the requisite qualifications, training in EEO matters and or Title VII laws.

272.        On March 27, 2017, Plaintiff notifies Lieutenant Colonel Christie and now, EEOO Director Witmer that Lieutenant Brown is not qualified to conduct an appeal over then, Director Morris' determination on November 21, 2016, for Plaintiff's EEOO Complaint #48-2015. Plaintiff advises any diverging opinion would invalidate Director Morris' credibility. Plaintiff also complains about the excessive time delays in adjudicating Plaintiff's complaints.

273.        Lieutenant Colonel Christie nor Director Witmer responds to Plaintiff's concerns, which Plaintiff avers and believes is an admission and validation of his concerns.

274.        April 14, 2017, Captain Gustaitis requests Plaintiff to submit his resume for Captain. Captain Gustaitis relates he and Major Grey will be endorsing Plaintiff for Captain.

275.     As of April 2017, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

276.     On April 18, 2017, Colonel Blocker disseminates correspondence indicating six (6) White male Lieutenants will be promoted to Captain effective May 6, 2017.

277.     As of May 2017, Plaintiff is "*again*" eligible under the existing promotional system or regulation, and the Collective Bargaining Agreement for promotion for the rank of Captain.

278.     On May 6, 2017, Plaintiff is passed over again for promotion to Captain by Colonel Blocker, who promotes six (6) White male Lieutenants to Captain, one of which had a disciplinary record. Colonel Blocker knows Plaintiff is the senior Lieutenant in the PSP, sole minority, Black eligible employee remaining in the PSP, senior (as a Lieutenant) to those individuals promoted by approximately (6) six to (9) nine years, never received formal discipline, and recently received an "outstanding" annual evaluation on December 5, 2016.

279.     Plaintiff avers and believes these individuals are promoted over the Plaintiff, as he has cooperated in the investigations by the PSP of Sergeant Holt's EEOO Complaint(s), aided Sergeant Holt who has successfully sued the PSP in Federal court for race discrimination within and retaliation by the PSP and its members, Plaintiff filing an internal EEOO and external EEOC complaint, opposing employment discrimination and retaliation when the persons promoted did not.

280.     On May 9, 2017, now, Major Morris dismisses Plaintiff's second EEOO Complaint #35-2016 filed on December 21, 2016. The dismissal is 141 days after the initial complaint is

filed on December 21, 2016, and 116 days after Director Morris was in receipt of Assistant Director Trans investigative report.  Director Morris dismisses Plaintiff's complaint, knowing he was not interviewed by his subordinate Assistant Director Tran, and that such is a violation of PSP Policy and MD 410.10.

281.     Plaintiff is advised again by Major Morris that an appeal of his decision can be taken to Lieutenant Brown, a direct subordinate of Lisa Christie, although not qualified.

282.     Plaintiff avers and believes the PSP intentionally delayed their investigation into the Plaintiff's EEOO Complaint, as only four individuals needed to be interviewed, Colonel Blocker, Major Hoke, Captain Cain and the Plaintiff. Plaintiff believes the findings were delayed as the Plaintiff is eligible to retire and there is no legit, non-discriminatory reason for the excessive delay.

283.     **May 19, 2017, 571 days after Plaintiff's initial filled EEOO Complaint on October 26, 2015 and 161 days after filing an appeal with Lieutenant Brown on December 9, 2016, as feared, Lieutenant Brown dismisses Plaintiff complaint #48-2015, with the knowledge of PSP, Lieutenant Colonel Christie, and Director Witmer knowing Lieutenant Brown is not qualified.**

284.     Lieutenant Brown knowingly dismisses the complaint without considering all the *"available facts"* that were presented to Director Morris from Captain Arndt on October 18, 2016. Lieutenant Brown fails to consider five months of critical information that was investigated by Captain Arndt. Lieutenant Brown also knows Captain Arndt did not interview Plaintiff about Plaintiff's lowered the yearly evaluation and Plaintiff was never appointed into the ATC position multiple times.

285.    Plaintiff avers and believes the PSP, Lieutenant Colonel Christie, Director Witmer and Lieutenant Brown intentionally delay the findings, as Plaintiff is eligible to retire and there is no legit non-discriminatory reason for the excessive delay, especially knowing Lieutenant Brown did not have the requisite qualifications, training in EEO matters and or Title VII laws.

286.    On May 19, 2017, Plaintiff files a complaint with Lieutenant Colonel Christie about Director Morris and Assistant Director Tran's collective Policy performance failures in not following PSP Policy and MD 410.10, for Plaintiff's EEOO Complaint #35-2016, filed on December 21, 2016, as well as, for the excessive time delays in adjudicating Plaintiff's complaints.

287.    Plaintiff also mentions Sergeant Holt, Corporal Rachael Jones, Troopers Holland and Torran Bucannon, as examples of other victims of the EEOO Policy performance failures and whose complaints of discrimination and retaliation were summarily dismissed; however, Sergeant Holt and Corporal Rachel Jones EEOO Complaints are examples of the EEOO's Policy performance failures, as their complaints pass Federal Summary Judgment.

288.    As fact, Sergeant Holt prevails on all three trials against the PSP and the appeal to the Third Circuit.  Corporal Rachel Jones prevails on December 20, 2017, when awarded 250, 000.00, by a Federal jury against the PSP and then, Defendant Sergeant Michael Tinneny, who was awarded and promoted to Lieutenant by Colonel Blocker in the interim.

289.    Lieutenant Colonel Christie never responds to Plaintiff's concerns and permits the aforementioned Policy violations to continue, along with the excessive investigative delays for his pending complaints.

290.    Plaintiff avers and believes Lieutenant Colonel Christie does not respond as she knows the information Plaintiff states is true and correct, that her subordinates failed to follow PSP policy and MD 410.10, and was shielding Colonel Blocker, Major Hoke and Captain Cain for their retaliatory and discriminatory acts against the Plaintiff.

291.    On May 31, 2017, Plaintiff appeals Director Morris' EEOO complaint #35-2016 determination to Lieutenant Brown, although not qualified.

292.    On June 6, 2017, Lieutenant Gouldy completes EEOO Complaint #15-2017 and forwards the report to now, Director Witmer and Assistant Director Tran. Lieutenant Gouldy fails to interview Plaintiff, a violation PSP Policy and MD 410.10

293.    In or about June 7-12, 2017, Plaintiff notifies Mrs. Robin Jones, Chief, EEOO Director for all CWOPA Agencies under Governor Wolf, and Director Witmer, of the PSP/MD 410.10 Policy violations and how the Plaintiff was not interviewed, as well as, the PSP's EEOO overall performance failures.  On June 13, 2017, Mrs. Jones responds to the Plaintiff and relates MD 410.10 applies to *"all agencies"* under the Governor's jurisdiction. Director Witmer does not respond.

294.    On June 18, 2017, Plaintiff upon the information received from Mrs. Jones, and due to Lieutenant Colonel Christie failing to acknowledge Plaintiff's concerns on May 19, 2017, files an IAD Complaint against Director Morris and Assistant Director Tran, for their collective performance failures when failing to adhere to PSP Policy and MD 410.10 because the policy requires a complainant to be interviewed.

295.    On August 16, 2017, 63 days after Plaintiff files his IAD Complaint on June 18, 2017, he is *"finally"* interviewed. Plaintiff mentions Lieutenant Gouldy's failure to interview him

for EEOO #15-2017, with the knowledge of Lieutenant Colonel Christie, Director Witmer, and Assistant Director Tran.

296.    Lieutenant Colonel Christie and Director Witmer at all times material to Plaintiff's complaint was aware Plaintiff filed an IAD Complaint against, Director Morris, and Assistant Director Tran, for performance issues; however, each permit Lieutenant Tran to review his pending EEOO Complaint #15-2017.

297.    On August 29, 2017, the Colonel Blocker enacts an EEOO policy change on how an EEOO complainant can appeal a dismissed EEOO Complaint determination. Colonel Blocker removes Lieutenant Brown as the appeal officer and replaces him with Director Witmer who is assigned to review all complainant appeals.

298.    Plaintiff avers and believes Colonel Blocker makes the change as Plaintiff exposed that Lieutenant Brown was not qualified to make EEO appeal determinations.

299.    On September 6, 2017, although under investigation for performance issues, now Director Tran is permitted to adjudicate and dismiss Plaintiff's third EEOO Complaint EEOO #15-2017, with the knowledge of Lieutenant Colonel Christie and Director Witmer.

300.    The dismissal is 225 days "*after*" the initial complaint was filed on January 24, 2017, and 91 days "*after*" Director Tran was in receipt of Lieutenant Goudy's investigative report on June 6, 2017. Director Tran dismisses Plaintiff's complaint knowing the he was not interviewed by Lieutenant Gouldy and that such is a violation of PSP Policy and MD 410.10, because the policy requires a complainant to be interviewed. As fact, Director Tran dismisses the complaint although fully aware of MD 410.10, as he references same in the correspondence provided to the Plaintiff.

301.    Plaintiff is advised by Director Tran that an appeal of his decision can be taken to his supervisor, Director Witmer.

302.    Plaintiff avers and believes the PSP intentionally delayed their investigation into the Plaintiff's EEOO Complaint, as Colonel Blocker was the "*only*" subject that needed to be interviewed. Plaintiff believes the findings were delayed as the Plaintiff is eligible to retire.

303.    Plaintiff inquires of Director Tran why he was not interviewed in violation of PSP Policy and MD 410.10. Director Witmenr responds to Plaintiff that the question posed is being addressed through an IAD investigation, thus Director Tran does not provide a factual reason.

304.    Plaintiff avers and thus believes that Director Witmer's response demonstrates a policy or practice or custom of the CWOPA/PSP/EEOO is aware of subordinate actions, such as Director Trans, but not limited to Lieutenant Tran and acquiesces, condones and ratifies the failure to interview complainants of employment discrimination and dismisses the complaint. Furthermore, Director Witmer's response clearly identifies ex-parte communications have occurred with his subordinate, Director Tran or the IAD investigator, which is a PSP policy violation, as all IAD investigation are to be confidential.

305.    On September 7, 2017, 260 days after Plaintiff's initial filled EEOO Complaint on December 21, 2016 and 99 days after filing an appeal with Lieutenant Brown on May 31, 2017, as feared, Lieutenant Brown dismisses Plaintiff Complaint #35-2016.

306.    Lieutenant Brown dismisses the complaint knowing the Plaintiff was not interviewed, a violation of PSP Policy and MD 410.10 and knowing he does not have the requisite qualifications, training in EEO matters and or Title VII laws.  As fact, Lieutenant Brown

dismisses the complaint although fully aware of MD 410.10, as he references same in the correspondence provided to the Plaintiff.

307.     Colonel Blocker permits Lieutenant Brown conduct the appeal, even "*after*" his enacted policy change on August 29, 2017. Plaintiff learns Lieutenant Brown was awarded and appointed into the prestigious FBI Academy by Colonel Blocker.

308.     Plaintiff avers and believes the PSP and Lieutenant Brown intentionally delayed their findings as Plaintiff is eligible to retire, and there is no legit non-discriminatory reason for the excessive delay, especially knowing Lieutenant Brown does not have the requisite qualifications, training in EEO matters and or Title VII laws.

309.     September 18, 2017, Plaintiff advises Director Witmer that he "strongly objects and adamantly insists" he does not appeal his subordinate's (Lieutenant Tran) dismissal of EEOO 15-2017, due to an egregious conflict of interest, being intimately familiar with his filed complaint since January 24, 2017, known and condoned Policy violations, and having knowledge of Plaintiff's IAD Complaint filed against his subordinate. Plaintiff requests Director Witmer to have an independent outside agency review his EEOO Complaint #15-2017.

310.     On September 19, 2017, Director Witmer responds to Plaintiff's request, denies same and also provides *"additional options/other avenues of reconsideration,"* i.e. file with the EEOC/PHRA.

311.     September 25, 2017, Plaintiff *"again"* requests Director Witmer to have an independent outside agency review his EEOO Complaint #15-2017; however, same was again declined. To exhaust all administrative remedies within, the Plaintiff is forced to appeal Lieutenant Tran's determination for EEOO Complaint #15-2017, to Director Witmer.

312.     On September 27, 2017, Plaintiff files another internal EEOO Complaint #36-2017 against Colonel Blocker for non-promotion and passing Plaintiff over for promotion on May 6, 2017.

313.     On September 30, 2017, a "*Just Cause*" finding of Discrimination and Retaliation is made by the Federal EEOC against the PSP on Plaintiff's first EEOC charge. Plaintiff received the finding and EEOC invitation on October 2, 2017, for informal conciliation on October 6, 2017.

314.     Less than 48 hours after receiving the "Just Cause" finding from the EEOC, the PSP, Colonel Blocker refuses conciliation with the Plaintiff.

315.     On October 6, 2017, Plaintiff forwards the "*Just Cause*" finding to Colonel Blocker. Plaintiff also complains to Blocker about the systemic problems within the internal EEOO and Colonel Blocker's subordinate, Lieutenant Colonel Christie. Plaintiff advised Colonel Blocker that Lieutenant Colonel Christie never responded to Plaintiff's concerns; as it turns out, neither does Colonel Blocker.

316.     On October 6, 2017, Plaintiff, as per PSP policy files an IAD Complaint against Captain Cain and Major Hoke for violating his Civil Rights under Title VII.   PSP refuses to investigate Plaintiff's request stating in part, *"while the Department agrees that you have a right to be free from racial discrimination and retaliation in the workplace, the Department maintains that neither racial discrimination, nor retaliatory actions, played a role in any decisions relative to your employment"* and "*Director Morris reviewed both investigations and determined that there was 'insufficient evidence' to substantiate allegations of discrimination and retaliation.*"

317.     On October 26, 2017, in accordance with PSP Policy and MD 410.10, CWOPA/PSP acquiesces and *"finally"* interviews Plaintiff on EEOO Complaint #36-2017, filed on September 27, 2017, but no other complaints, such as EEOO #35-16 and #15-2017.

318.     On October 31, 2017, Director Witmer dismisses Plaintiff's Complaint #15-2017, knowing the Plaintiff was not interviewed in violation of PSP Policy and MD 410.10.

319.     On November 3, 2017, Plaintiff receives another "*outstanding*" yearly evaluation from Captain Gustaitis and Major Grey.

320.     On November 3, 2017, Plaintiff files a Federal EEOC Complaint about discrimination and retaliation for non-promotion occurring on May 6, 2017.

321.     On or about October 10, 2017, CWOPA/PSP notified the EEOC that PSP does not wish to participate in the EEOC conciliation process.

322.     Plaintiff has exhausted agency process. But for Plaintiff's November 3, 2017, charge, the Plaintiff received a right-to-sue letter from the EEOCon or after October 8, 2017.

323.     Plaintiff initiates this civil action within 90 days of receipt of the EEOC right-to-sue letter and two years of the last act under color of state law that deprived Plaintiff of a civil right under U.S. Constitution, law, regulation, or rule.

V.     CAUSES OF ACTION

COUNT I
42 U.S.C. § 1983 et seq.
First Amendment Retaliation

324.     Plaintiff incorporates all preceding paragraphs hereto and as though repeated verbatim.

325.    Plaintiff is a member of a class that is protected by law under the First Amendment to the United States Constitution.

326.    Plaintiff engaged in the United States Constitutional First Amendment free speech and/or Petition Clause activity by opposing employment discrimination, filing a Discrimination charge to oppose perceived employment action, acting as a witness or in an investigation on a charge of race discrimination, denial of equal protection, and deprivation of free speech rights.

327.    Plaintiff gives under oath, truthful testimony, for Sergeant Holt, and against the CWOPA/PSP, before a governmentally created and lawfully sanctioned tribunal. The testimony was against several high-ranking members of the PSP, the PSP, and of those several high ranking, persons are Defendants named by Plaintiff in this complaint. Such as, but not limited to, Colonels Brown and Blocker, Lieutenant Colonels Biven and Christie, Major's Hoke and Morris, Captains Arndt, Batcher, Cain and Witmer, Lieutenants Brown, Tran and others.

328.    Plaintiff spoke out on matters of public concern. Such as, but not limited to, illegal employment practices by a public employer, viz, PSP/CWOPA; racial profiling of motorists by a PSP Trooper; the failure of PSP and its high ranking officers and officials, policy-makers, and their subordinates to comply with the law, which includes Governor's Executive orders, that relate to illegal employment discrimination.

329.    Plaintiff engaged in other First Amendment activity, such as petition clause activity. To wit, filing formal internal and external EEO Complaints against the PSP and its supervisors and policymakers, alleging racial discrimination and retaliation by the public employer, supervisors, and policymakers.

330.    The complaint Plaintiff filed involved a practice, custom, and unwritten policy of the COWPA/PSP to discriminate against persons in terms and conditions of employment and for PSP supervisors to condone, acquies, and aid the policy practice and custom to discriminate in employment, because of race or gender.

331.    Plaintiff complained in writing and by word and deed; he spoke out and to the Governor's Office of Administration and his Office about racial discrimination and retaliation by and within the PSP and its high-ranking members. Plaintiff spoke out about PSP and its high ranking members' failure to comply with law, rule, and regulations, relating to employment discrimination.

332.    Plaintiff cross-filed with the Pennsylvania Human Relations Commission ("PHRC") his EEOC charges of employment discrimination because of race and prior protected activity.

333.    Plaintiff gave sworn testimony against the PSP in a state hearing tribunal, which testimony was adverse to the PSP and favorable to another PSP member, viz Sergeant Holt.

334.    At all times material to the Plaintiff's claims, the defendants knew that Plaintiff was a witness for Sergeant Holt, in Sergeant Holt's federal civil rights employment discrimination lawsuit and EEOC and EEO discrimination charges.

335.    At the time of the Plaintiff's activities, stated in the preceding paragraphs, the law recognized and was clearly established to notice the Defendants that Plaintiff's activity is First Amendment free speech and/or petition clause activity, which if deprived by them under color of state law, as is the case here, the deprivation by failing to promote to captain, assign as a ATC, subjecting Plaintiff to an unwarranted IAD investigation, and deny a proper, fair and complete

investigation of EEO Complaints by not conducting interviews before a dismissal of the complaint, would subjected the Defendants to Section 1983 liability.

336.    Plaintiff's employment duties did not require the Plaintiff to speak out against, report, or file internal and/or external employment discrimination complaints, testify is civil discrimination lawsuits and grievances, or report racial profiling of motorists by Troopers and/or PSP and its supervisors not complying with Governor's Executive and Management orders.

337.    Plaintiff spoke as a private citizen when speaking to the EEOC, the Governor's Office of Administration and others. Plaintiff spoke truthfully when he testified under oath about employment and race discrimination, retaliation, and the PSP and its high-ranking officials/supervisors violating citizen rights by racial profiling and violating anti-discrimination laws.

338.    Employment Race Discrimination and Retaliation by a public employer, the PSP, and profiling motorist because of the race by PSP Troopers are matters of public concern under the First Amendment to the United States Constitution.

339.    Plaintiff's aid to Sergeant Holt and the publication of Sergeant Holt's trial verdicts and judgments, which were reported on by news media, are matters of public concern under the First Amendment to the United States Constitution.

340.    It is a public concern that: (a) Defendants, as public employees and/or supervisors over Plaintiff engaged in illegal conduct or misconduct in the workplace, (b) a governmental or public employer, the CWOPA/PSP condones and/or acquiesces to  illegal conduct or misconduct by its employees and/or supervisors, and  fails to investigate and/or take

action when misconduct is reported; and/or retaliate against persons, including the Plaintiff, for their report of illegal conduct or misconduct in the workplace and by PSP members.

341.     The substantial motivating reason for, and but for, Plaintiff's race, and report of perceived race discrimination, racial harassment, and the aid to Sergeant Holt with truthful sworN testimony, Plaintiff would not have been subjected to an unwarranted IAD investigation, (b) denied promotions and position; (c) lost wages, prestige and benefits of the employment (d) denied prompt and proper investigations into Plaintiff's race-based employment complaints and of retaliation as done by high-ranking members of the PSP.

342.     Plaintiff was denied employment opportunities and treated differently than how White members were treated by the PSP.

343.     Plaintiff was offered a pre-textual transfer which to plaintiff appeared to be a façade promotional offer. to a less prestigious assignment for his speech and because of his race, whereas, had Plaintiff accepted the transfer he likely would have been terminated.

344.     The substantial and/or motivating reason for the individual Defendants' action, the adverse action is Plaintiff's First Amendment activity to speak out against internally, externally, through media, and a state-created tribunal, and oppose perceived race discrimination and/or racial harassment.

345.     Plaintiff's unequivocal opposed perceived race discrimination and/or racial harassment by the government and its high-ranking employees, members, or officials.

346.     Defendants acted in concert with one another or others, such as the Doe Defendants to deprive Plaintiff of rights.

347.     The Defendants intended, knew, or should have known their acts were to achieve a common pursue, which was to discriminate because of race, retaliate for protected activity, and deny plaintiff of rights,

348.     The Defendants acted together and alone to deprive Plaintiff of federally protected rights, such as to liberty and property, and equal protection.

349.     The proximate, direct, or legal cause of Plaintiff's injury, damages, and denial of federal rights is from the Defendants' acts, actions, or omissions to act.

350.     The Defendants' actions or omissions were done under color of state law.

351.     Defendants' conduct, acts, action, and omissions were intentional, done in reckless disregard or deliberate indifference of Plaintiff's federally secured rights, privileges, and immunities, such as the First and Fourteenth Amendments.

352.     As the proximate result of the Defendants' acts, action, or omissions, Plaintiff, sustained economic damages in excess of $160,000.00 from lost wages, benefits attendant to the employment, diminished retirement benefits, and lost employment and post-employment career opportunities and earnings attended to that employment.

353.     As the proximate result of the Defendants' acts, action or omissions, Plaintiff, suffered an injury to his person. Such as, but not limited to these injuries, loss of the enjoyment of life and/or society, embarrassment, humiliation, and mental anguish, for which plaintiff sought relief through mental health counseling.

354.     Defendants acted, knowingly, recklessly, intentionally, with gross negligence, the Defendants acted with malice and or to deprive Plaintiff of his rights; they acted with deliberate indifference to the Plaintiff's rights and/or in reckless disregard for the Plaintiff's rights.

COUNT II
42 U.S.C. § 1983 et seq.
Race Discrimination

355.    Plaintiff incorporates all preceding paragraphs hereto and as though repeated verbatim.

356.    Plaintiff, because of his race has been treated unequally or differently by the Defendants in the terms and conditions of employment and contract rights.

357.    Plaintiff's unequal treatment by the Defendants is motivated because of Plaintiff's race and Defendants' amicus for the Plaintiff's race.

358.    Defendants acted intentionally.

COUNT III
Title VII - 42 U.S.C. § 2000e
Employment Discrimination/Retaliation

359.    Plaintiff, incorporates all preceding paragraphs hereto and as though repeated verbatim.

360.    Plaintiff's protected status is Black.

361.    In violation of Title VII (42 U.S.C 2000e st seq.), Defendants Discriminated against Plaintiff because of his race and/or opposition to perceived Race Employment Discrimination by; (a) not awarding Plaintiff promotion to Captain, which rank, position, pay, and promotion he was qualified for; (b) not proving to Plaintiff Acting Troop Commander title and positon that were open and he is qualified; (c) failing to properly investigate Plaintiff's complaints of Racial Discrimination and Retaliation made to the PSP's EEOO and Governor's Office.

362.     In violation of Title VII (42 U.S.C 2000e et seq.), Defendants retaliated against Plaintiff in the terms and conditions of employment, because of race, and after Plaintiff engaged in a protected activity: (a) file formal internal and external EEO Complaints against the PSP, whereas he specifically, alleged Racial Discrimination and Retaliation; (b)  duel filed said external EEOC charges with the Pennsylvania Human Relations Commission, which charge is  against the PSP and high-ranking officers, officials and members, and which complaints alleged Racial Discrimination and Retaliation; (c) cooperated in as a witness in other EEOO investigations and a Federal Lawsuit against the CWOPA, the PSP, and members of their Department.

363.     The following adverse action(s) were taken against the Plaintiff in further Discrimination or Retaliation: (a) failed to properly investigate Plaintiff's discrimination complaints of race discrimination, retaliation, and racial profiling; (b) failure of the PSP to promote Plaintiff to Captain; (c) failure of PSP to assign Plaintiff to ATC positions that were open, available to, and Plaintiff qualified to fill.  (d) failure of the PSP to ensure its members properly followed the law and investigate employment discrimination complaints; (e) PSP subjected Plaintiff to an IAD investigation, thus discipline, which removed Plaintiff from promotion consideration and career advancement; (f) PSP subjected Plaintiff to lowered unjustified annual employment evaluation ratings, which some evaluations were not done timely, and the lowered and untimely evaluations removed Plaintiff from promotion and/or career opportunities, higher pay, the prestige of the promotion and office, and lowered Plaintiff's pension value; (g) POOR CAPTAIN ENDORSEMENT., DENIED OVERTIME, and DRUG TESTED without cause or as a random event under policy or contract

364.    But for Plaintiff's protected activity and membership class, the above stated adverse actions would not have been taken against him.

365.    The aforementioned adverse actions taken against Plaintiff by CWOPA/PSP occurred within a proximate time to Plaintiff's protected activity and/or is part of a pattern that when viewed as a whole under the circumstances is suggestive of discrimination.

366.    All other Defendants are high-ranking decision-makers and/or supervisors to Plaintiff. As such, the CWOPA/PSP is liable for the conduct of its employee.

367.    For all time material to Plaintiff's claims, the Defendants' had control or authority over plaintiff's work, duties, and pay.

368.    Each defendant, when acting against the Plaintiff, acted within the scope of the employment, to harm Plaintiff because of race and activity protected under Title VII, and to deny Plaintiff of equal terms and conditions of employment as a sworn uniformed member of the CWOPA/PSP.

369.    The employer (CWOPA and PSP) in violation of Title VII (42 U.S.C. 2000(e) et seq.) has a custom, practice, thus policy to discriminate in employment because of race, and to retaliate against employees because they opposed illegal employment discriminations, and to condone and/or acquiesce to retaliation or discrimination in employment, by supervisors, in the terms and conditions of employment.

370.    In violation of Title VII (42 U.S.C. 2000(e) et seq., the individual Defendants are supervisors. They have authority over Plaintiff's employment terms and conditions. Such as overtime pay, a tour of duty, hours of employment, and discipline.  As supervisors, they carried out and/or aided or abetted the CWOPA/PSP's policy or practice to discriminate in employment,

and the terms and conditions of it, because of race and/or prior opposition to employment discrimination

371.    Plaintiff filed a charge of Discrimination based on race and/or sex and/or retaliation with the EEOC and PHRC.    The charges were cross-filed with the Pennsylvania Humans Relations Act. The charges asserted employment discrimination violations under Title VII (42 USC 2000e).

372.    Plaintiff's Employment Discrimination charge identified PSP as the employer, which it is now and was when the charge was made.  The charge contained the name of the individual Defendants that name in the instant complaint. The charge described the individuals' conduct, so that each individual defendant would be on notice of potential liability under the Laws of the United States and CWOPA, and of an action for a "cat's paw" theory of liability and/or as aider and abettors.

373.    Plaintiff has exhausted all administrative remedies; he is provided a Right-to-Sue letter, and right the instant lawsuit within 90-days of the date the "Right-to-Sue" letter is received by Plaintiff.

COUNT IV
Title VII - 42 U.S.C. § 2000e
Employment Discrimination/Hostile work environment

.

374.    Plaintiff incorporates all preceding paragraphs hereto and as though repeated verbatim.

375.    Plaintiff was subjected to harassment by the Defendants, the harassment was motivated by Plaintiff's protected status, such as race, sex gender and opposing and participating in an opposition to employment discrimination.

376.    The employer is liable for the actions of the identified individual Defendants in plaintiff's claim of harassment.

377.    Plaintiff was subjected to non-promotion and assignment to the ATC positions that he was qualified for assignment and promotion. Plaintiff was subjected to an unwarranted IAD investigation that removed Plaintiff's ability to be promoted.

378.    The aforementioned conduct or conditions giving rise to harassment of the Plaintiff by the individual Defendants.

379.    The individuals' Defendants' individual and collective conduct were not welcomed by the Plaintiff.

380.    The Defendants individual and collective conduct were motivated by the fact that Plaintiff is a member in a protected class, such as his race, gender or sex and/or opposition to or partition in an opposition of employment discrimination.

381.    The conduct was so severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be hostile or abusive.

382.    Indeed, it was reported to Defendants Colonels Brown and Blocker, Lieutenant Colonels Biven, Christie, Major's Hoke and Morris, Captains Arndt, Batcher, Cain and Witmer, Lieutenants Brown, Tran, and others that Plaintiff was being subjected to employment discrimination.

383.    Plaintiff believes his work environment to be hostile or abusive because of the individuals' Defendants' individual and collective conduct.

384.    Plaintiff suffered an adverse "tangible employment action" because of the hostile work environment. In that Plaintiff was subjected to a significant change in employment status,

such as a non-promotion to Captain, non-promotion to ATC position; denial of OT, denial of training, lowered evaluation, drug tested, poor endorsement, subjected to unwarranted IAD, and being subjected to improper investigations and employment career opportunities.

385.    Plaintiff further believes thus claims that he was subjected to harassment by the individual Defendants, that this harassment was motivated by Plaintiff's protected status and activity, and the harassment was by Management level employees, who knew or should have known, of the abusive conduct.

386.    The Management level employees include Colonels Brown and Blocker, Lieutenant Colonels Biven and Christie, Major's Hoke and Morris, Captains Arndt, Batcher, Cain and Witmer, Lieutenants Brown, Tran, who when they acted knew or should have known their actions were abusive conduct. Indeed, the conduct as abusive was reported to them by the Plaintiff and/or by persons acting on Plaintiff's behalf.

387.    The Defendants did not exercise reasonable care to prevent harassment in the workplace, based on protected status.

388.    Defendants did not exercise reasonable care to promptly correct harassment.

389.    Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by the employer or individual Defendants.

390.    Defendants had established an explicit policy against harassment in the workplace, based on protected status and the policy was fully communicated to its employees.

391.    The employer's anti-harassment/employment discrimination policy provides a reasonable way for Plaintiff or employees to make a claim of harassment to higher management, which way Plaintiff followed and exhausted but which way and policy are ineffective to stop

discrimination in employment as the policy is applied or used by the employer and its supervisors.

392.    Plaintiff took reasonable steps to correct the problem after it was raised, and the Defendants failed to take prompt or approximate action to stop or correct the problem.

COUNT V
State Pendent Claim
Pennsylvania Human Relations Act 43 P.S. § 951
Employment Discrimination/Retaliation

393.    Plaintiff, incorporates all preceding paragraphs hereto and as though repeated verbatim.

394.    Plaintiff's protected status is black.

395.    In violation of Pennsylvania Human Relations Act (43 P.S. § 951 et seq.), Defendants Discriminated against Plaintiff because of his race and/or opposition to perceived race employment discrimination.

396.    In violation of the CWOPA's employment anti-discrimination law, PA Human Relations Act (43 P.S. § 951, et seq.), Defendants Retaliated against Plaintiff for engaging in protected activity and because of his race, for the reasons set forth in the above Counts that assert Retaliation and Employment Discrimination under Federal Law.

397.    The following adverse action(s) were the same as set forth in the above Counts that assert Retaliation and Employment Discrimination under Federal Law.

398.    But for Plaintiff's protected activity, the above stated adverse actions would not have been taken against him.  The adverse actions taken against Plaintiff occurred within a proximate time to the protected activity and/or the pattern for the acts and the adverse action is suggestive of intentional discrimination or retaliation.

399.    The CWOPA is liable for the conduct of its employee, since the individual Defendants are employees, supervisors, and acted within the scope of their employment when engaging in the race-based Employment Discrimination and/or Retaliatory Acts for Plaintiff's engaging protected activities under the law; they aided and abetted the employer's practice, custom, and policy to condone and/or engaged in Employment Discrimination and Retaliation against employees that report perceived Race Employment Discrimination and Retaliation.

400.    The CWOPA has a policy and/or practice, or condones and/or acquiesces to Discrimination in employment terms and conditions because of sex and/or race or Retaliation for opposing sex and/or race employment discrimination in violation of Pennsylvania Human Relations Act (43 P.S. § 951 et seq.).

401.    The named individual Defendants aided and abetted the employer's policy to Discriminate in employment terms and conditions because of sex and/or race or Retaliate for opposing sex and/or Race Employment Discrimination.

402.    Plaintiff filed a charge of Discrimination, based on race and/or sex and/or Retaliation with the EEOC and PHRC.   The charge was cross-filed and asserted a violation of Title VII (42 USC 2000e) and the Pennsylvania Humans Relations Act.

403.    Plaintiff's Employment Discrimination charge identified the PSP as the employer, which it is now and was when the charge was made.   The charge contained the name of the individual Defendants. The charge described their conduct, so-as-to put them on notice of potential liability under the Employment Discrimination Laws of the United States and CWOPA and under an "aider and abettor" theory of liability.

404.    Plaintiff has exhausted all administrative remedies and is entitled to file suit in the

appropriate court under Pennsylvania Human Relations Act 43 P.S. § 951 et seq. for Retaliation

for opposing sex and/or race Employment Discrimination.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays the Court enter judgment for him and against the

Defendants; to hold the Defendants joint and separately liable. Plaintiff prays the court award

the Plaintiff all relief law and equity allows. Such relief as, but not limited to, make-whole relief,

compensatory and consequential relief, and an award of punitive damages, front and back pay,

negative tax consequence relief, reasonable attorney fees, litigation costs, and any-and-all other

relief that the Court deems proper and just. Including a promotion, declaring the Defendants

acts, actions or omissions and conduct to have violated the Plaintiff's constitutional rights, and to

strike the policy practice or custom as unconstitutional, overly broad or sweeping, and to enjoin

the State and all employees of the State from aiding or abetting the policy practice and custom

declared unconstitutional.

Date:  December 28, 2017                  Respectfully submitted,


BY: _____/s/
     Brian M. Puricelli, Esq.
     Attorneys for Plaintiff

     LAW OFFICES OF BRIAN M. PURICELLI
     2721 Pickertown Rd.
     Warrington. PA. 18976
     (215) 504-8115

102