## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**GARY L. DANCE, JR.,**                       :

       **Plaintiff**          :          **CIVIL ACTION NO. 3:18-1593**

       **v.**                        :          **(JUDGE MANNION)**

**COMMONWEALTH OF**           :
**PENNSYLVANIA,**
**PENNSYLVANIA STATE**        :
**POLICE, GREGORY BACHER,**
**GEORGE BIVENS, TYREE**      :
**BLOCKER, MARCUS BROWN,**
**DAVID CAIN, LISA CHRISTIE**  :
**EDWARD HOKE, WENDELL**
**MORRIS, AND MICHAEL**       :
**WITMER,**
                            :
       **Defendants**
                            :

## MEMORANDUM

Presently before the court is Defendants' motion for summary judgment, (Doc. 135), and Plaintiff's motion to strike. (Doc. 142). Defendants have moved for summary judgment on all claims in Plaintiff's second amended complaint, (Doc. 79). Plaintiff has moved to strike Defendants' motion for summary judgment and its accompanying statement of material facts. Upon review, Plaintiff's motion to strike will be **DENIED**, and

Defendants' motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

Plaintiff Gary L. Dance, who is an African-American man, worked for the Pennsylvania State Police (PSP). (Doc. 156 ¶¶22–23). In 1996, he was assigned to the King of Prussia station, and in 2012, reassigned to Troop T – Pocono as Eastern Patrol Section Commander. (Id. ¶24, 26). As a state trooper, Dance was promoted to Corporal in 1998, Sergeant in 2002, Lieutenant in 2005, Captain in 2018, and Major in 2020.  (Id. ¶25; Doc. 139 ¶¶41–42, 46).

Plaintiff alleges that on multiple occasions he was passed over for promotion in favor of other less experienced, and Caucasian, officers. (Doc. 79 ¶¶54–56, 63, 68, 72, 80, 84, 89, 91–93, 96, 106). He also alleges that he was excluded from various decisions and communications and that certain

---

[1] Defendants have filed an answer to Plaintiff's second amended complaint. (Doc. 156). In addition, Defendants filed a statement of material facts, (Doc. 136), Plaintiff answered that statement, (Doc. 139), and filed a counter-statement of material facts (Doc. 138).

opportunities were withheld from him. (Id. ¶¶37, 62)   At various points, he informed Defendant Hoke of his concerns regarding discrimination and retaliation. (Id. ¶¶58, 65; Doc. 156 ¶¶58, 64–65). During his employment Plaintiff made internal complaints of discrimination and retaliation with the PSP Equal Employment Office. (Doc. 156 ¶79).

Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission in July 2016. (Doc. 139 ¶1). Regarding this Charge, the EEOC determined that there was reasonable cause to believe that Defendant PSP had violated Title VII of the Civil Rights Act of 1964. (Doc. 138-62). Conciliation was unsuccessful, and Plaintiff received notice of his right to sue. (Doc. 138-63). Plaintiff filed another Charge of Discrimination in November 2017. (Doc. 139 ¶7; Doc. 138-72). He filed additional charges in February 2019, (Doc. 138-72), and May 2019 (Doc. 138-74).

This case was originally filed in December 2017. (Doc. 1). Plaintiff amended his complaint first in May 2019, (Doc. 59), and again in December 2019. (Doc. 79).

The Second Amended Complaint names as defendants the Commonwealth of Pennsylvania, the Pennsylvania State Police, and a

number of PSP employees. (Doc. 79). Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, 42 U.S.C. §1981 pursuant to 42 U.S.C. §1983, and the First and Fourteenth Amendments pursuant §1983.

The court previously dismissed all of Plaintiff's Title VII claims that occurred before September 15, 2015, and all of Plaintiff's claims under §1983 that occurred before December 29, 2015. (Doc. 37).

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*,

903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial."   *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III.   DISCUSSION – MOTION TO STRIKE

Plaintiff has filed a "Motion to Strike Defendants' Motion for Summary Judgment and/or Their Statement of Material Facts," (Doc. 142), based on alleged violations of Federal Rule of Civil Procedure 56 and Local Rule 56.1. (Id. at 2).

Plaintiff first faults Defendants for not appending exhibits to their motion. Yet Rule 56 does not require "that the moving party supplement its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. Instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—

- 6 -

that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

As alleged violations of Local Rule 56.1, Plaintiff cites various "sweeping legal conclusions" contained in Defendants' statement of facts "without citations to the record." (Doc. 143 at 7). Some of the statements to which Plaintiff refers are negations: assertions that Plaintiff has *not* produced evidence showing a certain fact. (Doc. 136 ¶¶10.a–c, 13a–3, 21). As such, they cannot themselves be supported by a record citation. Others are merely subparts of statements which do include a reference to the record. (Id. ¶¶39a–b, 40a–c). Still others are pure legal conclusions, not statements of fact. (Id. ¶¶47–57). Of course, such statements are of no use to the court or to Defendants—but that does not necessarily render the entire statement of facts unacceptable. Finally, Plaintiff cites one factual assertion which lacks a reference to the record. (Id. ¶46).  That statement, that Plaintiff was offered and accepted a promotion to Major in March 2020, is undisputed. (Doc. 139 ¶46). How the absence of citation for one undisputed fact, undoubtedly within

Plaintiff's personal knowledge, so frustrates the purpose of Local Rule 56.1 as to warrant striking entire filings is unclear.

Local Rule 56.1 requires that "[s]tatements of material facts … shall include references to the parts of the record that support the statement." With one exception, Defendants have provided a supporting reference to each statement of fact. Assuredly, Defendants' statement, as well as Plaintiff's counter-statement, could be more concise. And attempts in either to pass off legal conclusions, speculations, or opinions as facts are rejected.

Nonetheless, there is no indication that Plaintiff has been prejudiced by any technical violation of Local Rule 56.1. Defendants' fail to attach certain cited evidence at their own peril; in any event, Plaintiff's answer to Defendants' statement indicates that Plaintiff could access the record. As to the extraneous legal conclusions contained in Defendants' statement of facts, the court pays no mind to those whatsoever. And Plaintiff cannot claim that he was somehow disadvantaged by the absence of a record citation for the fact that Plaintiff himself was promoted to Major, a fact which he admits.

A district court's decision whether to employ sanctions for violations of local rules is "fully within the discretion of that Court." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018). Here, the court concludes

- 8 -

that sanctions are unnecessary. To be sure, the court continues to require strict compliance with the Local Rules. At the same time, it urges counsel to train their efforts on resolution of the case. *See* Model Rules of Pro. Conduct. r. 3.2 (Am. Bar. Ass'n).

## IV.    DISCUSSION – MOTION FOR SUMMARY JUDGMENT

### A. Exhaustion of Administrative Remedies

Count I of the Complaint brings various claims under Title VII of the Civil Rights Act of 1964. (Doc. 79 ¶¶110–14). Before bringing a Title VII claim in court, a plaintiff must file a complaint with the EEOC and thereafter receive a right-to-sue letter.  Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001); 42 U.S.C. §2000e-5(f)(1). If the complainant decides to bring an action in court, it must be filed within 90 days of receipt of the right-to-sue letter. §2000e-5(f)(1); Burgh, 251 F.3d 465, 470 (3d Cir. 2001).

Defendants argue that they are entitled to summary judgment on all failure-to-promote to Captain claims because Plaintiff failed to exhaust such claims. (Doc. 137 at 13).

Plaintiff's first EEOC charge, Charge No. 530-2016-03171, was filed on July 16, 2016. (Doc. 138-40). Plaintiff there alleged that he was passed

over for promotion to Acting Troop Commander in favor of a white lieutenant. (Id.). He also made allegations concerning lowered performance reviews and denials of discretionary overtime requests following Plaintiff's testimony related to another officer's discrimination complaints. (Id.). Finally, Plaintiff generally alleged that "[s]ince October 19, 2014" he had "been denied a promotion, denied temporary assignments, and purposely excluded from all decisions that are warranted for my position as a Lieutenant." (Id.). On October 4, 2017, the EEOC issued a right-to-sue letter regarding this charge. (Doc. 138-64). Plaintiff filed his original complaint within 90 days, on December 29, 2017. (Doc. 1).

"The 'relevant test'" for determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether 'the acts alleged in the subsequent suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) ("Where discriminatory actions continue after the filing of an EEOC complaint … the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints …. This court has recognized this fact in

- 10 -

permitting suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint.")).

The court concludes that Plaintiff's failure-to-promote to Captain claims were fairly within the scope of Charge No. 530-2016-03171, which alleged that Plaintiff, a Lieutenant, had been denied promotions. The scope of that allegation fairly includes promotions to Captain. Therefore, Plaintiff did not fail to exhaust administrative remedies regarding his failure-to-promote to Captain claims.

Defendants also argue that Plaintiff failed to exhaust his second EEOC charge, Charge No. 530-2018-00435. (Doc. 137 at 11). Plaintiff filed Charge No. 530-2018-00435 with the EEOC on November 8, 2017, alleging that he was passed over for promotion to Captain on four occasions in favor of less senior, Caucasian individuals. (Doc. 138-72). The parties agree that Plaintiff received right-to-sue notice on July 23, 2018. (Doc. 137 at 12; Doc. 140 at 10). Defendants argue that because no new action or amendment was filed before October 21, 2018, 90 days after the right-to-sue notice, Plaintiff failed to exhaust the claims contained in this charge. (Doc. 137 at 13).

This argument must be rejected for the same reason as Defendants' more general argument regarding failure-to-promote to Captain claims. Charge No. 530-2018-00435 alleges later failure-to-promote to Captain claims, and is thus also fairly within the scope of Charge No. 530-2016-03171, which was properly exhausted prior to the filing of this lawsuit. Because its allegations are fairly within the scope of a properly exhausted charge, Charge No. 530-2018-00435 did not need to be separately exhausted. And the promotions which this charge alleges to have occurred between August 13, 2016 and May 6, 2017, (Doc. 138-72), were included in Plaintiff's original complaint, (Doc. 1 ¶¶231, 244–45, 251, 253–54, 260, 275–78), which was timely filed within 90 days of Plaintiff receiving his right-to-sue letter regarding Charge No. 530-2016-03171. For these reasons, the court concludes that Plaintiff's Title VII claims are not precluded by such failures to exhaust.

### B. Counts I & VI Title VII Discrimination

Counts I and VI bring claims of racial discrimination against the Commonwealth and the Pennsylvania State Police under Title VII. A Title VII discrimination claim based on indirect evidence of discrimination is analyzed according to the *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802–03

(1973) framework. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (2013). Under this analysis, the plaintiff bears the initial "burden of making out a prima facie case of discrimination. *Id.* "[T]he burden of production then shifts to the defendant to offer a legitimate non-discriminatory justification for the adverse employment action." *Id.* Finally, the burden of production shifts "back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.*

A prima facie case of discrimination requires a showing that the plaintiff (1) "is a member of a protected class"; (2) "was qualified for the position [he] sought to retain" (3) "suffered an adverse employment action"; and that (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). A plaintiff may show circumstances giving rise to an inference of discrimination by identifying "similarly situated" individuals outside the protected class who were treated more favorably than the plaintiff. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013).

Defendants argue that Plaintiff cannot make out a prima facie case of discrimination because he cannot show that he was treated less favorably

- 13 -

than similarly situated employees or that he suffered an adverse employment action. (Doc. 137 at 20–21).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) ("The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection.").

### i. Adverse Employment Action

In the Title VII context, an "adverse employment action" is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). Defendant's argument on this element is that Plaintiff cannot show such an action. (Doc. 137 at 21).

Failure to promote is an adverse employment action. *Barnees v. Nationwide Mut. Ins. Co.*, 598 Fed. Appx. 86, 90 (3d Cir. 2015); *Walker v. Centocor Ortho Biotech, Inc.*, 558 Fed. Appx. 216, 219 (3d Cir. 2014); *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 ("What qualifies as an adverse employment action …. includes … failing to promote." (E.D. Pa. 2020) (quoting *Remp. V. Alcon Lab'ys, Inc.*, 701 Fed. Appx. 103, 106 (3d Cir.

2017)); *Watson v. Pennsylvania*, 2009 WL 151595, at *3 (M.D. Pa. 2009) (citing *Sherrod v. Phila. Gas Works*, 57 Fed. Appx. 68, 73 (3d Cir. 2003)).

Plaintiff has provided evidence that Defendants failed to promote him during the relevant time period. (Doc. 136 ¶30; 48; Doc. 138-3).  He has thereby shown an adverse employment action sufficient for making out a prima facie case of discrimination.

### ii.  Inference of Discrimination

The focus of Defendants' argument on this element is that Plaintiff has not identified similarly situated employees who were treated more favorably than he was. The determination of whether comparator employees are similarly situated considers factors such as "the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Chase v. Frontier Commc'ns Corp.*, 361 F. Supp. 3d 423, 436–37 (M.D. Pa. 2019) (quoting *Wilcher v. Postmaster Gen.*, 441 Fed. Appx. 879, 882 (3d Cir. 2011)). "Though similarly situated does not mean identically situated, a plaintiff must demonstrate that [he] is similar to the alleged comparator in relevant respects." *McClung v. Songer Steel Servs., Inc.*, 1 F. Supp. 3d 443, 451 (W.D. Pa. 2014) (quoting *Warfield v.*

*SEPTA*, 460 Fed. Appx. 127, 130 (3d Cir. 2012)) (internal quotations omitted).

Plaintiff points out that of the nine Lieutenants promoted on February 13, 2016, seven had less time in-grade than Plaintiff. (Doc. 140 at 21; Doc. 136 ¶31c). And on August 13, 2016, three Caucasian lieutenants who had less time in-grade were promoted to Captain. (Doc. 138-3; Doc. 138-33). Plaintiff points to further examples of Caucasian lieutenants who were promoted to Captain in 2016 and 2017 despite less time in-grade than Plaintiff. (Doc. 140 at 22; Doc. 138-3; Doc. 138-33).

Plaintiff asserts that these comparator employees are similarly situated because "[t]hey were of the same rank" and all promotions to Captain were made through the same decisionmaker—the PSP Commissioner, who between 2015 and 2018 was Defendant Blocker. (Doc. 150-4 at 12; Doc. 138-16 at 9:8–11, 23:14–18).

Plaintiff has thus shown evidence that similarly situated Caucasian employees—PSP lieutenants whose promotion decisions were made by the same Commissioner—were treated more favorably by receiving promotions despite having served less time as lieutenants. This showing gives rise to the inference of discrimination required to make a prima facie case.

### iii.  Title VII Discrimination – Conclusion

For the foregoing reasons, the court concludes that Defendants have not identified the absence of a genuine dispute on any essential element of Plaintiff's Title VII discrimination claims. Therefore, Defendants' motion for summary judgment will be denied as to Plaintiff's Title VII discrimination claims.

### C. Counts I & VI - Title VII Retaliation

Counts I and VI bring claims of racial discrimination against the Commonwealth and the Pennsylvania State Police under Title VII. Defendants argue that Plaintiff cannot establish a prima facie case for Title VII retaliation. (Doc. 137 at 21). A prima facie case of Title VII retaliation requires that a Plaintiff show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006).

It appears Defendants' contention is that Plaintiff has not shown a causal connection between protected activity and an adverse employment action. (Doc. 137 at 21–22). A causal connection can be supported by

- 17 -

circumstantial evidence, such as "temporal proximity," "ongoing antagonism," or inconsistent reasons given for the adverse action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000).

In support of a causal connection, Plaintiff first submits that after he resisted pressure from Defendants Hoke and Cain to change an officer's performance review, Plaintiff himself received a negative performance review and negative endorsements. (Doc. 140 at 24; Doc. 138-14 at 65:23–67:20; Doc. 138-15 at 77:11–80:7; Doc. 138-26; Doc. 138-13).

The negative endorsements to which Plaintiff refers were submitted in August 2015, (Doc. 138-32), so cannot form part of Plaintiff's Title VII claim, as the court has dismissed Plaintiff's Title VII claims that occurred before September 15, 2015. (Doc. 37). As to the negative performance review, it rates Plaintiff "Satisfactory" in most categories and "Needs Improvement" in "Supervision/Management," notes that Plaintiff "demonstrated his lack of proper judgment and willingness to hold a subordinate accountable when he completed an [Employee Performance Review] for" a station commander. (Doc. 138-26). Although this may show a causal connection between Plaintiff's own negative review and his refusal to change the officer's review,

Plaintiff must also show that his review constitutes an adverse employment action.

Defendants posit that Plaintiff has not pointed to evidence showing that the review had "some tangible effect" on Plaintiff's employment. (Doc. 149 at 15). *See Storey*, 390 F.3d at 764 (defining "adverse employment action," as required for a prima facie Title VII claim, as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges."). Plaintiff assures the court that PSP performance reviews "matter." (Doc. 150-4 at 15 n.3). This assertion is not enough to raise a genuine dispute of material fact about whether this review had a serious and tangible effect on Plaintiff's employment.

Plaintiff also cites an internal affairs complaint initiated by Defendants Hoke and Cain following Plaintiff's complaint of discrimination. (Doc. 140 at 25; Doc. 138-15 at 152:9–157:2; Doc. 138-44). Plaintiff notes that this complaint was submitted only a few days after Plaintiff had filed a charge of discrimination with the EEOC. (Doc. 150-4 at 15; Doc. 138-40). As with the performance review, Plaintiff has not presented evidence that this complaint had a serious and tangible effect on Plaintiff's employment.

- 19 -

Plaintiff further points out that he submitted an EEOC complaint on December 21, 2016, and was passed over for promotion to Captain on December 31, 2016 and January 28, 2017. (Doc. 150-4 at 15; Doc. 138-56; Doc. 138-3). He also contends that the fact that Defendant Christie, who was Deputy Commissioner of Administration and Professional Responsibilities and would provide recommendations regarding promotions, "vetted candidates for promotional opportunities to Captain through the EEO office" suggests a causal connection.  (Doc. 140 at 25; Doc. 150-4 at 16; Doc. 138-18 at 9:13–14; 13:16–24, 53:23–56:6). Defendant Christie testified that she was aware of Plaintiff's prior EEO complaints at the time of the December 6, 2016, promotion process, but that she was not aware of any negative impact on his promotion prospects due to his complaints. (Doc. 138-8 at 90:15–92:13; Doc. 138-58).

The court concludes that the temporal proximity between Plaintiff's complaints and the promotions, together with Defendant Christie's awareness of Plaintiff's complaints, would allow a factfinder to infer a causal connection between Plaintiff's protected activity of making complaints and Defendants' adverse employment action of failure to promote. Promotional decisions were made within days and weeks of Plaintiff's EEOC complaints,

and Plaintiff has presented evidence that Defendant Christie was involved in the promotion decision-making process while aware of Plaintiff's complaints.

In addition, this inference could be supported by other evidence plausibly suggesting a pattern of antagonism. As discussed, Plaintiff has presented evidence that Defendants Hoke and Cain initiated an internal affairs complaint against him following a discrimination complaint. (Doc. 138-15 at 152:9–157:2; Doc. 138-44). Even though that may not constitute an adverse employment action, this evidence could be relevant to a factfinder's evaluation of the circumstances surrounding Defendants' alleged retaliation. *Cf. Chambers v. Pennsylvania*, 2020 WL 4699045, at *9 (E.D. Pa. 2020) (reasoning that although evidence of "alleged attempts to drug test and surveil [the plaintiff]" and "alleged insufficient investigation of his EEO complaints" were time-barred, "a factfinder could find them probative of antagonism and animus). Plaintiff's further evidence that Defendant Hoke defied an order to reduce the internal complaint to a supervisory resolution could also contribute to that evaluation. (Doc. 140 at 25; Doc. 138-15 at 152:23–159:5).

In sum, Defendants have not identified an absence of a genuine dispute of material fact on any essential element of Plaintiff's Title VII

retaliation claims. Therefore, Defendants' motion for summary judgment will be denied as to Plaintiff's Title VII retaliation claims.

### D. Count I - Title VII Hostile Work Environment

Count I also brings Title VII hostile work environment claims against the Commonwealth and the Pennsylvania State Police. Defendants have not argued that Plaintiff has failed to make out a prima facie Title VII hostile work environment claim. Therefore, Defendants' motion for summary judgment will be denied as to these claims.

### E. Count II - Pennsylvania Human Relations Act

Plaintiff also asserts claims of discrimination, retaliation, and hostile work environment against the Commonwealth and the Pennsylvania State Police under the Pennsylvania Human Relations Act. (Doc. 79 at 21–22). "The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009). As discussed above, the court concludes that Defendants have not identified an absence of a genuine dispute of material fact as to Plaintiff's claims under Title VII. Therefore,

Defendants' motion for summary judgment will be denied as to Plaintiff's PHRA claims.

### F. Section 1983 Claims in general

Plaintiff brings multiple claims against the individual Defendants through 42 U.S.C. §1983, "which provides a cause of action to any individual who has been deprived of his rights under the Constitution or other federal laws by a person acting 'under color of law.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). Defendants correctly recognize that §1983 claims cannot be premised on a theory of *respondeat superior*, and that a plaintiff must instead show personal involvement by each defendant in the alleged wrongs. *See Millbrook v. U.S.*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014). They assert that Plaintiff cannot do so, without further argument as how the evidence is lacking. (Doc. 137 at 22–23).

There is some disagreement regarding the sufficiency of Defendants' argument on this score. Plaintiff contends that it "is so poorly developed it is almost impossible to respond to and constitutes waiver." (Doc. 140 at 29). A party moving for summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This burden of "showing" may be

discharged by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Although the generalized nature of Defendants' argument limits its force, Defendants have indeed pointed out an absence of evidence as to individual involvement. The Complaint names as Defendants Captain Gregory Bacher, Colonel Marcus Brown, Colonel George Bivens, Director Wendell Morris, and Director Michael Witmer. (Doc. 79). Yet Plaintiff presents no evidence of wrongful actions taken by these individuals. (See Doc. 138). Plaintiff's counter-statement of disputed material facts includes no actions by Defendants Brown, Bivens, or Witmer, and Defendants deny any such involvement alleged in the Complaint. (See Doc. 136; Doc. 156 ¶¶99, 100, 125–26, 135). As to Defendant Morris, Plaintiff presents evidence only that he informed Defendant Christie of Plaintiff's EEO complaint history upon request. (Doc. 138 ¶¶167–68, 170; Doc. 138-18; Doc. 138-82). The court considers this evidence insufficient to create a genuine dispute of material fact regarding Defendant Morris' individual involvement in a violation of Plaintiff's rights. And it is undisputed that Defendant Bacher retired on March 13, 2015, (Doc. 156 ¶52), more than two years before this suit was filed. "The statute of limitations for a §1983 claim arising in Pennsylvania is

- 24 -

two years," *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); so there is no evidence of individual involvement by Defendant Bacher in the requisite time period.

Plaintiff has presented evidence of individual involvement by the other named Defendants. For example, there is evidence that Defendant Blocker made decisions as to promotions. (Doc. 138-16 at 22: 24–23:18). There is also evidence that Defendant Christie was involved in promotion decisions. (Doc. 138-18 at 13:16–24). Finally, as discussed with regard to Plaintiff's Title VII claims, the record includes multiple individual actions by Defendants Hoke and Cain, such that Defendants have not met their burden of pointing out an absence of evidence as to them simply by asserting that there is no personal involvement.

In sum, because evidence of individual involvement by Defendants Bacher, Brown, Bivens, Morris, and Witmer is absent, summary judgment

will be granted in favor of these individual Defendants as to Plaintiff's §1983 claims.

### G. Counts III & VII - Section 1981 claims against Individual Defendants through Section 1983

Counts III and VII of the Complaint bring claims of violations of 42 U.S.C. §1981, through §1983, against the individual Defendants. (Doc. 79 at 23). Defendants argue that §1981 does not provide Plaintiff a remedy because claims against state employees can only be brought under §1983. (Doc. 137 at 23).

While Defendant is correct that §1981 cannot provide Plaintiff a remedy, that is of no moment because §1983 can. *McGovern v. City of Philadelphia*, 554 F.3d 114, 115 (3d Cir. 2009), on which Defendants rely, held that §1981 does not provide a private right of action against state actors. The plaintiff in *McGovern* had failed to bring timely §1983 claims, and so sought relief under §1981 instead. Although *Jet v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989) had rejected the existence of a private remedy under §1981, the plaintiff in *McGovern* argued that the Civil Rights Act of 1991's amendments to §1981 had superseded *Jet*. The Third Circuit, having examined the decisions of other courts of appeal and the relevant legislative

history, readopted *Jet*'s holding that "the express cause of action for damages created by §1983 constitutes the exclusive federal remedy for violation of the rights guaranteed by §1981 by state governmental units." *McGovern*, 554 F.3d at 120 (quoting *Jet*, 491 U.S. at 733).

So Plaintiff's claims are not foreclosed by *McGovern*. Rather, he brings his §1981 claims against state employees in exactly the way *McGovern* instructs: through §1983, which "constitutes the exclusive federal remedy for violation of the rights guaranteed in §1981." 554 F.3d at 120. A claim that a state actor violated a plaintiff's rights under §1981 may only be brought through §1983, as Plaintiff does here. *See, e.g.*, *Hill v. Borough of Colwyn*, 978 F. Supp. 2d 469, 474 (E.D. Pa. 2013) ("Plaintiffs bring their §1981 claims via §1983 because §1981 does not provide a cause of action against state actors."); *Walker v. City of Coatesville*, 2014 WL 6698304, at *2 (E.D. Pa. 2014) ("Plaintiffs seeking to enforce the protection from discrimination that [§1981] guaranteed must still press their claims through the vehicle of 42 U.S.C. §1983."); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 664 (E.D.

Pa. 2020) ("[T]he court will consider whether Plaintiffs' rights under §1981 were violated by Solanco in the context of their §1983 claim.").

Because Defendants have not identified an absence of a genuine dispute of material fact as to Plaintiff's §1983 claims for violations of §1981, their motion for summary judgment will be denied as to these claims.

## H. Counts IV & VIII - Equal Protection claims

Counts IV and VIII bring claims of violations of the Equal Protection Clause of the Fourteenth Amendment against the individual Defendants through §1983. (Doc. 79 at 26). Defendants do not attempt to identify any absence of evidence as to these claims specifically. Therefore, Defendants' motion for summary judgment as to Plaintiff's equal protection claims will be denied.

## I. Count V - First Amendment Retaliation

Finally, through §1983, Plaintiff brings claims of First Amendment retaliation against the individual Defendants. Defendants' argument for summary judgment on these claims consists of a statement of law regarding the required showing for a prima facie First Amendment retaliation claim. (Doc. 137 at 23). *See Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) ("To state a First Amendment retaliation claim, a plaintiff must allege

two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."). Assuming Defendants' contention is that Plaintiff has failed to present a prima facie First Amendment claim, the court agrees.

"A public employee's statement is protected by the First Amendment when '(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made.'" *Gorum v. Sessions*, 561 F.3d 179, 185 (3d Cir. 2009) (quoting *Hill*, 455 F.3d at 241)).

Without citing authority, Plaintiff asserts that "[a]n EEO complaint or a lawsuit is clearly protected activity under the petition clause of the First Amendment." (Doc. 140 at 30). There is no evidence Plaintiff was faced with retaliation for filing this lawsuit; to the contrary, the suit was originally filed on December 29, 2017, (Doc. 1), and Plaintiff was promoted to Captain in

February 2018. (Doc. 138 ¶31). The question, then, is whether Plaintiff's filing an EEO complaint is an activity protected by the First Amendment.

Plaintiff contends that his complaint is protected under the First Amendment's Petition Clause. *See* U.S. Const. amend. I ("Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances."). As with any public employee speech, a petition only triggers First Amendment protection when it is "on a matter of public concern," and if it is, "the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011). "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or 'when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (first quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983); then quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)).

The court concludes that Plaintiff's filing of an EEO complaint was not a petition on a matter of public concern. Plaintiff's complaints allege that

certain employment decisions made by his superior officers constituted discrimination and retaliation against him. (See, e.g., Doc. 138-40, Doc. 138-72). This matter was thus personal to Plaintiff, and did not involve a matter of public importance. Through this petition he was not "seek[ing] to participate, as a citizen, in the process of deliberative democracy." *Guarnieri*, 564 U.S. at 398. Neither was he "seek[ing] to communicate to the public or to advance a political or social point of view beyond the employment context." *Id.* He simply sought redress for wrongs that he allegedly suffered during his employment, by means of a private complaint[2]—as such, it was a matter of private concern, and not protected by the First Amendment.

This conclusion is consistent with that of other courts in this circuit. *Shari v. Manning*, 2013 WL 3754818, at *12 (M.D. Pa. 2013), for example, concluded that a PSP officer's EEO complaint, which alleged discrimination by the officer's superior, was not on a matter of public concern because it was "confidential and not an attempt to communicate publicly." The court in *Holt v. Pennsylvania*, 2014 WL 2880376, at *15 (E.D. Pa. 2014) also

---

[2] EEOC charge information is not disclosed to the public. *See* Confidentiality, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/confidentiality.

concluded that "the mere filing of an internal EEO complaint itself is not a matter of public concern." Likewise, a plaintiff's EEO discrimination complaint was not on a matter of public concern where its "consistent suggestion was that she was the sole target of discrimination by other officers at the PSP … and never implied any broader significance to the behavior that she recounted." *McCartney v. Pa. State Police*, 2011 WL 3418381, at *31 (M.D. Pa. 2011).

Because Plaintiff's EEO complaint was not on a matter of public concern, it was not protected by the First Amendment. Plaintiff has therefore not established a prima facie First Amendment retaliation claim, and the Defendants' motion for summary judgment will be granted as to this claim.

## V.    CONCLUSION

In accordance with the foregoing discussion: Plaintiff's motion to strike, (Doc. 142) will be **DENIED**. Defendant's motion for summary judgment will be **GRANTED** as to Defendants Bacher, Brown, Bivens, Morris, and Witmer, and as to Plaintiff's First Amendment retaliation claims. Defendants' motion for summary judgment will be **DENIED** as to Plaintiff's other claims. Because there are no remaining claims against them, Defendants Bacher, Brown,

Bivens, Morris, and Witmer will be **DISMISSED**. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 3, 2023**
18-1593-05